IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2013 AUG 15  AM 9: 12

RANJITH KEERIKKATTIL,

    Plaintiff,

v.

    Civil Action No.: WMN-13-02016

FREEMAN A. HRABOWSKI, et al.,

    Defendants.

\*   \*   \*   \*   oooOooo   \*   \*   \*   \*

## PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS BY DEFENDANTS FREEMAN HRABOWSKI, NANCY YOUNG, JEFFREY CULLEN, PAUL DILLON, WILLIAM KIRWAN AND BOARD OF REGENTS OF UNIVERSITY SYSTEM OF MARYLAND

Plaintiff, Ranjith Keerikkattil, hereby submits his motion in opposition to Defendants'

Motion to Dismiss by Defendants Freeman A. Hrabowski, Nancy L. Young, Jeffrey E. Cullen,

Paul Dillon, William E. Kirwan, and the Board of Regents of the University System of

Maryland. The Plaintiff's complaint not only meets but exceeds the standards governing the form

of a complaint contemplated by Federal Rule of Civil Procedure 8(a), this Court has subject

matter jurisdiction in this matter, and the complaint sufficiently states plausible claims for relief.

The grounds and authorities for this motion are set forth in the supporting memorandum, and a

proposed order is filed with this motion.

WHEREFORE, Plaintiff, Ranjith Keerikkattil requests that the Court deny Defendants'

Motion to Dismiss by Freeman A. Hrabowski, Nancy L. Young, Jeffrey E. Cullen, Paul Dillon,

William E. Kirwan, and the Board of Regents of the University System of Maryland.

Respectfully submitted,

_____

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
Telephone: (443) 690-1031
rkeerikkattil@gmail.com

Plaintiff, pro se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2013, a copy of the Plaintiff's motion in opposition to Defendants' motion to dismiss and the memorandum in support thereof were served by personal delivery and electronic mail to:

Kristin P. Herber
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Fl.
Baltimore, Maryland 21202-2021
kherber@oag.state.md.us

_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RANJITH KEERIKKATTIL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: WMN-13-02016 |
| FREEMAN A. HRABOWSKI, et al., | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   ooo0ooo   \*   \*   \*   \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO

## DISMISS

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
Telephone: (443) 690-1031
rkeerikkattil@gmail.com

*Plaintiff, pro se*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I. Standard of Review ..................................................................................................... 2

    A.   Motion to Dismiss Pursuant to Rule 12(b)(1) ................................................... 2

    B.   Motion to Dismiss Pursuant to Rule 12(b)(6) ................................................... 3

II. The Board of Regents and the Chancellor are Defendants liable in this suit ......................... 4

III. Board of Regents and the Individual State Defendants in their Official Capacity are "Persons" Subject to Injunctive and Declaratory Relief ............................................................ 6

IV. Plaintiff's Title IX claims not barred by Eleventh Amendment immunity ........................... 8

V. Defendants are liable for statutory violations under Maryland law ....................................... 9

VI. Defendants acted with malice and/or gross negligence ..................................................... 11

VII. Keerikkattil's well-established property and liberty interests in his education were deprived by Defendants without due process of law ............................................................... 13

VIII. Keerikkattil states a valid claim for First Amendment violation ..................................... 15

IX. UMBC's Admission Letter and Student Handbook constitute contractual relationship .... 18

X. FRCP permits the Plaintiff to plead Promissory Estoppel along with Breach of Contract.. 20

XI. Defendants' actions undeserving of qualified immunity ................................................... 20

XII. Negligent Training and Supervision ............................................................................ 22

XIII. Intentional Infliction of Emotional Distress ................................................................ 23

XIV. Civil Conspiracy and Malicious Use of Civil Process ...................................................... 24

XV. Defamation ........................................................................................................................ 26

CONCLUSION........................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Amnesty Int'l, USA v. Battle,*

   559 F.3d 1170 (11th Cir. 2009)..............................................................................................15

*Ashcroft v. Iqbal,*

   556 U.S. at 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .....................................................3

*Atchison, Topeka & Santa Fe Ry. v. Buell,*

   480 U.S. 557, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987) ...........................................................2

*Bair v. Shippensburg University,*

   280 F. Supp. 2d 357 (M.D. Pa. 2003) ....................................................................................17

*Baltimore-Clark v. Kinko's Inc.,*

   270 F.Supp.2d 695 (D. Md. 2003) .........................................................................................23

*Barbre v. Pope,*

   402 Md. 157, 935 A.2d 699 (2007).........................................................................................12

*Bell Atl. Corp. v. Twombly,*

   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .........................................................2

*Board of Regents v. Roth,*

   408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ...........................................................14

*Booher v. Northern Kentucky University Board of Regents,*

   No. 2:96-CV-135, 1998 U.S. Dist. LEXIS 11404 (E.D. Ky. July 21, 1998)............................17

*Brennan v. Stewart,*

   834 F.2d 1248 (5th Cir. 1988)................................................................................................7

*Brooks v. Lewin Realty III, Inc.,*

   378 Md. 70, 835 A.2d 616 (2003) ......................................................................................... 17

*Brown v. Dermer,*

   357 Md. 344, 744 A.2d 47 (2000) ......................................................................................... 11

*Chinn v. City Univ. of N.Y. Sch. of Law at Queens College,*

   963 F. Supp. 218 (E.D.N.Y. 1997) ......................................................................................... 7

*Cobb v. The Rector and Visitors of the Univ. of Va.,*

   69 F. Supp. 2d 815 (W.D. Va. 1999) ................................................................................... 13

*College Republicans at San Francisco State University v. Reed,*

   523 F. Supp. 2d 1005 (N.D. Cal. 2007) ............................................................................... 17

*Corso v. Creighton University,*

   731 F.2d 529 (8th Cir. 1984) ............................................................................................... 18

*Dambrot v. Central Michigan University,*

   55 F.3d 1177 (6th Cir. 1995) ............................................................................................... 17

*Davis v. Monroe County Board of Education,*

   526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) ..................................................... 16

*Davis v. Thompson,*

   367 F. Supp. 2d 792 (D. Md. 2005) ...................................................................................... 2

*DeJohn v. Temple University,*

   537 F.3d 301 (3d Cir. 2008) ................................................................................................ 17

*Dinu v. President and Fellows of Harvard College,*

   56 F.Supp.2d 129 (D.Mass. 1999) ................................................................................. 18, 19

*Doe v. University of Michigan,*

    721 F. Supp. 852 (E.D. Mich. 1989) ...................................................................... 17

*Edelman v. Jordan,*

    415 U. S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ............................................ 7

*Ex parte Young,*

    209 US 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908) .................................................. 6, 7

*Fellheimer v. Middlebury College,*

    869 F.Supp. 238 (D.Vt. 1994) ................................................................................ 18

*Fitzpatrick v. Bitzer,*

    427 U.S. 445, 49 L. Ed. 2d 614, 96 S. Ct. 2666 (1976) ............................................ 9

*Fontell v. Hassett,*

    2011 WL 4632579 (D. Md. Oct. 3, 2011) ............................................................... 24

*Giles v. Howard University,*

    428 F.Supp. 603 (D.DC. 1977) .............................................................................. 19

*Gomes v. Univ. of Maine Sys.,*

    365 F. Supp. 2d 6 (D. Maine 2005) ........................................................................ 15

*Goss v. Lopez,*

    419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) ............................................ 14

*Gourdine v. Crews,*

    405 Md. 722, 955 A.2d 769 (2008) ........................................................................ 11

*Green v. Mansour,*

    474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) ........................................... 6, 7

*Guckenberger v. Boston Univ.*,

    957 F.Supp. 306 (D.Mass. 1997) ........................................................................... 18

*Harlow v. Fitzgerald*,

    457 US 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) ...................................................... 8, 21

*Harris v. Jones*,

    281 Md. 560, 380 A.2d 611 (1977)........................................................................... 23

*Henson v. Honor Committee of the Univ. of Va.*,

    719 F.2d 69 (4th Cir. 1983)................................................................................. 13

*Hishon v. King & Spalding*,

    467 U.S. 69, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984) ................................................... 3

*Holert v. University of Chicago*,

    751 F.Supp. 1294 (N.D.Ill. 1990) ........................................................................... 18

*Kashani v. Purdue Univ.*,

    813 F.2d 843 (7th Cir. 1987)................................................................................. 7

*Keating v. City of Miami*,

    598 F. 3d 753 (11th Cir. 2010)............................................................................. 15

*Kerns v. United States*,

    585 F.3d 187 (4th Cir. 2009)............................................................................... 2, 3

*Keys v. Chrysler Credit Corp.*,

    303 Md. 397, 494 A.2d 200 (1985)......................................................................... 24

*Khoury v. Meserve*,

    268 F. Supp. 2d 600 (D. Md. 2003) ........................................................................ 3

*Lane v. Pena*,

    518 U.S. 187, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996) .......................................................... 9

*Lewin v. Medical College of Hampton Roads*,

    910 F. Supp. 1161 (E.D. Va. 1996) ......................................................................................... 13

*Litman v. George Mason University*,

    186 F. 3d 544 (4th Cir. 1999) ................................................................................................. 9

*Lloyd v. General Motors Corp.*,

    397 Md. 108, 916 A. 2d 257 (2007) ....................................................................................... 24

*Lyons v. Salve Regina College*,

    565 F.2d 200 (1st Cir. 1977) .................................................................................................. 19

*Mahavongsanan v. Hall*,

    529 F.2d 448 (5th Cir. 1976) ................................................................................................. 19

*Mangla v. Brown*,

    135 F.3d 80 (1st Cir. 1998) ............................................................................................. 18, 19

*McCauley v. University of the Virgin Islands*,

    618 F.3d 232 (3d Cir. 2010) ................................................................................................. 17

*Merrow v. Goldberg*,

    672 F.Supp. 766 (D.Vt. 1987) ............................................................................................. 18

*Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc.*,

    982 F. Supp. 873 (S.D. Fla. 1997) ........................................................................................ 20

*Muhammad v. Maryland*,

  No. 11-3761-ELH, 2012 U.S. Dist. LEXIS 38225, 2012 WL 987309 (D. Md. Mar. 20, 2012).

    .................................................................................................................................... 12

*Newsome v. Batavia Local Sch. Dist.*,

    842 F.2d 920 (6th Cir. 1988) ................................................................................... 15

*Pearson v. Callahan*,

    555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ........................................ 21

*Peretti v. Montana*,

    464 F.Supp. 784 (D.Mont. 1979) ........................................................................... 19

*Phillips v. LCI Int'l, Inc.*,

    190 F.3d 609 (4th Cir. 1999) ................................................................................... 2

*Polakoff v. Turner*,

    385 Md. 467, 869 A.2d 837 (2005) ......................................................................... 10

*Pope v. Barbre*,

    172 Md. App. 391, 915 A. 2d 448 (2007) ................................................................ 13

*Rivers v. Hagner Management Corporation*,

    182 Md. App. 632, 959 A. 2d 110 (2009) ................................................................ 10

*Roberts v. Haragan*,

    346 F. Supp. 2d 853 (N.D. Tex. 2004) .................................................................... 17

*Robertson v. Sea Pines Real Estate Cos.*,

    679 F.3d 278 (4th Cir. 2012) ................................................................................... 3

*Rock for Life-UMBC v. Hrabowski*,

    594 F. Supp. 2d 598 (D. Md. 2009) ........................................................................ 17

*Russell v. Salve Regina College*,

    890 F.2d 484 (1st Cir. 1989) ................................................................................... 18

*Saucier v. Katz,*

    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ....................................................... 21

*Sec'y of State for Defence v. Trimble Navigation Ltd.,*

    484 F.3d 700 (4th Cir. 2007)...................................................................................................... 2

*Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services,*

    94 F. Supp. 2d 680 (D. Md. 2000). ........................................................................................... 3

*Shaw v. Stroud,*

    13 F.3d 791 (4th Cir. 1994)...................................................................................................... 23

*Slochower v. Board of Educ.,*

    350 U.S. 551, 76 S. Ct. 637, 100 L. Ed. 692 (1956) ................................................................ 14

*Sohmer v. Kinnard,*

    535 F. Supp. 50 (D. Md. 1982) ................................................................................................ 14

*Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.,*

    190 F. Supp. 2d 785 (D. Md. 2002) .......................................................................................... 20

*Swierkiewicz v. Sorema N.A.,*

    534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) .............................................................. 2

*Thompson v. Goetzmann,*

    337 F.3d 489 (5th Cir. 2003)..................................................................................................... 3

*Treleven v. Univ. of Minn.,*

    73 F.3d 816 (8th Cir. 1996);...................................................................................................... 7

*UWM Post, Inc. v. Board of Regents of the University of Wisconsin,*

    774 F. Supp. 1163 (E.D. Wisc. 1991) ...................................................................................... 17

*Van Royen v. Lacey,*

    262 Md. 94, 277 A. 2d 13 (1971)...................................................................................... 24

*Velasco v. Gov't of Indonesia,*

    370 F.3d 392 (4th Cir. 2004)............................................................................................ 3

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,*

    535 US 635, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) ......................................... 7

*Virginia v. Black,*

    538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) ....................................... 16

*Will v. Michigan Dep't of State Police,*

    491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ........................................... 6

*Williams v. Howard University,*

    528 F.2d 658 (D.C. Cir. 1976) ....................................................................................... 19

*Wood v. Strickland,*

    420 U.S. 308, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975) ............................................. 8

**Statutes**

20 U.S.C. § 1681.................................................................................................................. 11

42 U.S.C. § 2000d-7 ............................................................................................................ 9

Md. Code Ann., Cts & Jud. Proc. § 5-522(a)............................................................... 12

Md. Code Ann., Educ. § 12-102 ...................................................................................... 4

Md. Code Ann., Educ. § 12-104 ......................................................................... 4, 5, 12, 19

Md. Code Ann., Educ. § 12-106 ................................................................................ 5, 12, 13

Md. Code Ann., Educ. § 12-108 ...................................................................................... 5

Md. Code Ann., Educ. § 12-109 ................................................................................... 4, 5

Md. Code Ann., State Govt. § 12-201 ........................................................................ 19

Md. Code Ann., State Govt. § 12-202 ........................................................................ 19

**Regulations**

COMAR Title 13b ...................................................................................................... 11

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 2

Fed. R. Civ. P. 8(d) ............................................................................................... 2, 20

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3

**Other Authorities**

Paul Mark Sandler & James K. Archibald,

   PLEADING CAUSES OF ACTION (Fifth Edition) ............................................. 22

RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL

   HARM § 14 (2010) ........................................................................................... 9, 10

**INTRODUCTION**

Plaintiff, Ranjith Keerikkattil, files this memorandum of law in support of his motion opposing Defendants' motion to dismiss filed by Freeman A. Hrabowski, Nancy L. Young, Jeffrey E. Cullen, Paul Dillon, William E. Kirwan, and the Board of Regents of the University System of Maryland.

Plaintiff, Ranjith Keerikkattil, filed this action seeking declaratory and injunctive relief and damages against the Board of Regents, USM Chancellor William E. Kirwan, UMBC President Freeman A. Hrabowski, UMBC Vice President of Student Affairs Nancy L. Young, UMBC Director of Office of Student Judicial Programs Jeffrey E. Cullen, Deputy Chief of UMBC Police Paul Dillon, and former UMBC student Soutry De alleging various causes of action arising out of false and misleading claims made by De against him and the subsequent arbitrary and capricious sanctions imposed against the Plaintiff.

In his complaint, the Plaintiff asserted the following claims: Count I (42 U.S.C. § 1983: Fourteenth Amendment Due Process), Count II (42 U.S.C. § 1983: First Amendment Retaliation), Count III (Breach of Contract), Count IV (Promissory Estoppel), Count V (Negligence), Count VI (Negligence Per Se), Count VII (Gross Negligence), Count VIII (Negligent Training and Supervision of Employees), Count IX (Intentional Infliction of Emotional Distress), Count X (Civil Conspiracy and Concert of Action), Count XI (Malicious Use of Civil Process), and Count XII (Defamation).

For the reasons set forth in this brief as well as in Plaintiff's memorandum in support of preliminary injunction (ECF No. 2-1) and his reply brief in support thereof, Defendants' motion to dismiss should be denied.

1

## ARGUMENT

### I. Standard of Review

Federal Rule of Civil Procedure 8(a) states that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Supreme Court has explained that according to Fed. R. Civ. P. 8(a)(2), a complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *accord Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint"). See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint and also any documents attached or incorporated by reference. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts

upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).

**B.  Motion to Dismiss Pursuant to Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. A motion to dismiss under Rule 12(b)(6) is disfavored in the law and rarely granted. *See Thompson v. Goetzmann* 337 F.3d 489, 495 (5th Cir. 2003). A court may dismiss a claim only when it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations found in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

"[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence*

3

sufficient to prove an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original) (internal quotation marks and citation omitted). The court must then "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief." *Iqbal*, 556 U.S. at 664.

## II. The Board of Regents and the Chancellor are Defendants liable in this suit

Under Md. Code Ann., Educ. § 12-102(b), "The government of the University System of Maryland is vested in the Board of Regents of the University System of Maryland." The Board "[i]s responsible for the management of the University System of Maryland and has all the powers, rights, and privileges that go with that responsibility," and may "sue and be sued . . . in all courts." Md. Code Ann., Educ. § 12-104(b)(3), (c)(1).

Consistent with the goals, objectives, and priorities of the Board of Regents and its legal responsibility for the efficient management of the University, [the Board] shall delegate to the president of each constituent institution authority needed to manage that institution, including authority to make and implement policies promoting the mission of that institution, including the authority to establish policies appropriate to the institution's mission, size, location, and financial resources. Md. Code Ann., Educ. § 12-104(k)(1).

Each institution of the University System is headed by a president, who "serve[s] as the chief executive officer of the institution," is "responsible and accountable to the Board for the discipline and successful conduct of the institution and supervision of each of its departments," and "serves at the pleasure of the Board of Regents." Md. Code Ann., Educ. § 12-109(c), (d)(1)-(2).

4

The Board asserts that from this structure, it is not responsible for any constitutional violations by UMBC. Although the Board's management of UMBC has been delegated to Hrabowski by statute, *see* Md. Code Ann., Educ. § 12-104(k)(1), the statute is equally clear that the Board retains ultimate responsibility for the entire University System. *See* Md. Code Ann., Educ. §§ 12-104(c)(1), 12-109(d)(2). Combined with the Board's capacity to "sue and be sued," Md. Code Ann., Educ. § 12-104(b)(3), these provisions indicate that the Board is a proper defendant in this case.

Md. Code Ann., Educ. § 12-108 provides that the Board of Regents shall appoint a Chancellor of the University System of Maryland who serves as the Chief Executive Officer of the University System of Maryland.

> § 12-108. Chancellor;
> > (b) Powers and duties; term; compensation. --
> > > (1) The Chancellor shall:
> > > > (i) Advise the Board of Regents on systemwide policy;
> > > > * * *
> > > > (vii) See that the policies of the Board are carried out.

UMBC's Student Judicial Programs operate based on USM Policy on Student Affairs (which includes student discipline) established by the Board of Regents based on the Chancellor's advice. The Chancellor also ensures that this policy is carried out at USM institutions that includes UMBC.

In addition, Md. Code Ann., Educ. § 12-106 (f) clearly establishes the link between Presidents of USM Institutions, the Chancellor and the Board of Regents regarding student discipline.

> § 12-106. Plan for and administration of University
> > f) Discipline of students; conduct of student organizations and athletic programs. -

- In consultation with the Chancellor and the presidents, the Board may adopt policies providing for:
> (1) The discipline, suspension, expulsion, or reinstatement of any student;

Therefore, the oversight and management of UMBC, including student affairs and disciplinary matters, is within the statutory authority of the Board of Regents of the University System of Maryland and the Chancellor of the University System of Maryland. Hence, the Chancellor and Board of Regents are Defendants liable under this suit.

## III. Board of Regents and the Individual State Defendants in their Official Capacity are "Persons" Subject to Injunctive and Declaratory Relief

The Eleventh Amendment also does not preclude plaintiffs from bringing suit for injunctive relief to enjoin a state officer from engaging in conduct that is illegal under federal law or the U.S. Constitution. *See Ex parte Young*, 209 U.S. 123, 150-51 (1908). The Court noted that when a state official's conduct contravenes constitutional guarantees, the officer "is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 159-60. A state official in his or her official capacity, when sued for injunctive relief, would be a person under 42 U.S.C.S. § 1983 because official-capacity actions for prospective relief are not treated as actions against the State. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 89 (1989) ("On the other hand, although prospective relief awarded against a state officer also "implicate[s] Eleventh Amendment concerns," *Mansour,* 474 U. S., at 68, the interests in "end[ing] a continuing violation of federal law," *ibid.,* outweigh the interests in state sovereignty and justify an award under § 1983 of an injunction that operates against the State's officers or even directly against the State itself.") *Young* is a well-established legal fiction which holds that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation

of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Besides, the addition of a claim for

declaratory relief does not impose on the state any monetary loss for past breach of its duty. *See*

*Verizon Maryland, Incorporated v. Public Service Commission,* 535 U.S. 635, 646 (2002) (citing

*Edelman v. Jordan*, 415 U. S. 651, 668 (1974)).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment

bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint

alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"

*Verizon Maryland, Incorporated v. Public Service Commission* at 645. The question is whether

the complaint "alleges" a violation of federal law or the U.S. Constitution, not whether that

allegation is correct. *Id.* at 646 ("[T]he inquiry into whether suit lies under *Ex parte Young* does

not include an analysis of the merits of the claim."). Hence, "[U]nless the suit 'clearly appears to

be immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial

and frivolous,' a federal court always has jurisdiction of a suit seeking to enjoin state officials from

violating federal law." *Brennan* v. *Stewart*, 834 F.2d 1248, 1255 (5th Cir. 1988) (citation omitted).

Besides, court orders directing a state official to reinstate a Plaintiff are considered

prospective relief and such claims are not barred by the Eleventh Amendment. *Treleven v. Univ.*

*of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996); *Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir.),

cert. denied, 484 U.S. 846, 98 L. Ed. 2d 97, 108 S. Ct. 141 (1987); *Chinn v. City Univ. of N.Y. Sch.*

*of Law at Queens College,* 963 F. Supp. 218, 224-25 (E.D.N.Y. 1997).

Also, Defendants have claimed qualified immunity in dismissing the claims against them.

Plaintiff will discuss later in this brief why the Defendants should not be shielded by qualified

immunity. Nevertheless, qualified immunity does not shield government officials from injunctive

relief. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975).

Therefore, the following relief requested by the Plaintiff are not barred under Eleventh Amendment immunity:

- Preliminary and permanent injunctive relief invalidating and restraining enforcement of UMBC's sanctions against the Plaintiff.
- Declaration stating that Defendants' enforcement of UMBC's Code of Student Conduct violates First and Fourteenth Amendment rights of the Plaintiff and similarly situated students.
- Declaration stating that Defendants' failure to follow its own explicitly defined and published Student Due Process Rights violates the due process rights of the Plaintiff and similarly situated students.
- Re-instating the Plaintiff back as a graduate student.
- Issuing an order requiring the University to expunge all records relating to the disciplinary proceeding against the Plaintiff from University records.
- Issuing an order requiring the University to update its records to reflect that the Plaintiff is in good standing with no disciplinary record whatsoever and to so represent in the event of any third-party inquiry.
- Any other prospective relief that the Court may deem just and proper.

## IV. Plaintiff's Title IX claims not barred by Eleventh Amendment immunity

Congress has the power, when acting under the authority of the Fourteenth Amendment, to abrogate the Eleventh Amendment immunity by enacting legislation that allows federal courts to

hear these claims. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452-56, 49 L. Ed. 2d 614, 96 S. Ct. 2666 (1976). It is clear that Congress has acted to abrogate the immunity when a state is sued under Title IX. *Lane v. Pena*, 518 U.S. 187, 135 L. Ed. 2d 486, 116 S. Ct. 2092, 2099 (1996) (quoting 42 U.S.C. § 2000d-7(a)).

In passing the Civil Rights Remedies Equalization Act in 1986, Congress expressly conditioned the receipt of federal funds on a waiver of Eleventh Amendment immunity under certain enumerated federal anti-discrimination statutes, including Title IX. The statute provides:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, **title IX** of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.
>
> 42 U.S.C. § 2000d-7 (emphasis added).
>
> *See also Litman v. George Mason University,* 186 F. 3d 544 (4th Cir. 1999) (holding that

Section 2000d-7 constituted a waiver of sovereign immunity for suits under Title IX). Therefore, Plaintiff's claims alleging violations of Title IX are not barred by the Eleventh Amendment.

## V. Defendants are liable for statutory violations under Maryland law

The RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 14 (2010) provides the following formulation of the negligence *per se* doctrine: "An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect." In other words, when the plaintiff is a

9

member of a class for whose protection a statute was enacted, and the plaintiff is harmed by the defendant's violation of that statute, the defendant's negligence is established *per se*, *i.e.*, as a matter of law.

The commentary to the Restatement (Third) of Torts (Third Restatement) states that its negligence-per-se provision applies to violations of federal law[1]. The United States Supreme Court has also recognized that - [t]he violation of federal statutes and regulations is commonly given negligence-per-se effect in state tort proceedings[2].

Defendants in the Memorandum Supporting their motion to dismiss state that Maryland is one of the few states that does not recognize the violation of a statute as negligence *per se*; rather courts "treat the violation simply as evidence of negligence" citing the Maryland Court of Special Appeals in *Rivers v. Hagner Management Corporation*, 182 Md. App. 632 (2009). But, even though Maryland does not apply the doctrine of negligence *per se*, "[t]he standard for establishing a *prima facie* case of negligence in a statutory-based negligence action is different from the general standard for establishing a *prima facie* case of negligence in cases that are not governed by a statute." *Polakoff v. Turner*, 385 Md. 467, 476 n.5, 869 A.2d 837, 843 n.5 (2005). Therefore, although it is perhaps technically incorrect to assert a claim of "negligence *per se*" under Maryland law, this inaccurate verbiage in the caption of the count is not a basis to dismiss an otherwise properly pleaded cause of action for negligence based on an alleged statutory violation.

---

[1] RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 14 cmt. a (2010). The Reporters state: - The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.

[2] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) (quoting RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 14 reporter's note, cmt. a (Proposed Final Draft No. 1, 2005)).

Under Maryland law, when a plaintiff alleges that a defendant's duty is established by statute, "all that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of." *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 79, 835 A.2d 616, 621 (2003). Once the statutory violation is shown, "[p]roximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent. It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence." *Brown v. Dermer*, 357 Md. 344, 359, 744 A.2d 47, 55 (2000) (internal citations omitted), *overruled in part on other grounds by Brooks*, 378 Md. 70, 835 A.2d 616; *accord Gourdine v. Crews*, 405 Md. 722, 755, 955 A.2d 769, 789 (2008); *Brooks*, 378 Md. at 79, 835 A.2d at 621.

Plaintiff has sufficiently pleaded violations of 20 U.S.C. § 1681 (Title IX), COMAR Title 13b and other federal and state statutes and regulations designed to protect a specific class of persons which includes the Plaintiff. Hence, Plaintiff's claims based on statutory-based negligence should withstand motion to dismiss.

## VI. Defendants acted with malice and/or gross negligence

Plaintiff has already pleaded ill-will, wrongful motive and gross negligence against Defendants specifically Cullen and Dillon with supporting evidence in his memorandum in support of preliminary injunction (ECF No. 2-1) and his reply brief in support thereof. Besides, Plaintiff has also shared some of the evidence from the Hearing supporting his claims with Defendants Hrabowski, Young, Kirwan and Board of Regents and can provide even more evidence during the trial. "[W]ell-pled facts showing ill-will or evil or wrongful motive are sufficient to take a claim

11

outside of the immunity and non-liability provisions of the MTCA." *Barbre v. Pope*, 402 Md. 157,

182, 935 A.2d 699, 714 (2007) (internal quotation marks omitted). The complaint need not

expressly assert that the defendants acted with malice or gross negligence if it "alleges facts that .

. . could establish actual malice if ultimately supported by evidence and believed by a fact finder."

*Muhammad v. Maryland*, No. 11-3761-ELH, 2012 U.S. Dist. LEXIS 38225, 2012 WL 987309, *2

(D. Md. Mar. 20, 2012).

Under Maryland law, malice is "ill-will" or "evil or wrongful motive". *Barbre v. Pope*, 402

Md. 157, 935 A.2d 699, 714 (Md. 2007) (internal quotation marks omitted). Gross negligence is

an intentional failure to perform a manifest duty in reckless disregard of the consequences as

effecting the life or property of another, and also implies a thoughtless disregard of the

consequences without the exertion of any effort to avoid them. *Id.* at 717 (internal quotation marks

omitted).

Besides, Md. Courts and Judicial Proceedings Article § 5-522(a) specifically denies

immunity for state employees under § 12-104 for malice or gross negligence.

Md. Code Ann., Cts & Jud. Proc. § 5-522(a)
    (a) Immunity of the State is not waived under § 12-104 of the State Government Article
    for:
        * * *
        (4) Any tortious act or omission of State personnel that:
            (i) Is not within the scope of the public duties of the State personnel; or
            (ii) Is made with malice or gross negligence . . . .

The Defendants cite Md. Code Ann., State Gov't § 12-106, according to which Plaintiff is

required to submit a written claim to the Treasurer or a designee of the Treasurer within 1 year

after the injury and only after the Treasurer denies the claim is he allowed to file this suit in order

to be waived of State's sovereign immunity. However, when the Plaintiff alleges malice or gross

negligence, such a notice is not required. *Pope v. Barbre*, 915 A. 2d 448, 462 (2007) ("When, as in this case, the claimant pursues tort remedies against an individual classified as State personnel, based on acts allegedly committed with malice or gross negligence, a requirement of notice to the State would not serve the investigation and settlement purposes underlying section 12-106(b). Nor would notice to individual State personnel serve such purposes. Thus, the State Treasurer does not require early notice of a claim against an individual officer alleging a malicious or grossly negligent tort.")

For the reasons stated above and in ECF No. 2-1, **Count V (Negligence), Count VI (Negligence Per Se) and Count VII (Gross Negligence)** should survive dismissal.

## VII. Keerikkattil's well-established property and liberty interests in his education were deprived by Defendants without due process of law

See ECF No. 2-1 at pp. 10-13 for a detailed analysis on Keerikkattil's well-established property and liberty interest in his education. Besides, courts within the Fourth Circuit have ruled that students have a protected property interest in continued enrollment at a University. *See Henson v. Honor Committee of the Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983); *Cobb v. The Rector and Visitors of the Univ. of Va.*, 69 F. Supp. 2d 815, 826 (W.D. Va. 1999); *Lewin v. Medical College of Hampton Roads*, 910 F. Supp. 1161, 1164 (E.D. Va. 1996), aff'd, 120 F.3d 261 (4th Cir. 1997).

When Keerikkattil was admitted to the graduate program at UMBC, he had every expectation that UMBC would allow him to continue his program and graduate. If UMBC through its Kangaroo Court called Student Judicial Programs did not impose arbitrary and capricious sanctions without due process of law, Keerikkattil would have been able to continue his studies.

ECF No. 2-1 also provides a detailed account of multiple due process violations by the Defendants along with supporting evidence. Hence, Keerikkattil does not want to repeat them again in this brief. If defendants contest any of them then Keerikkattil would present evidence to support his claims including excerpts from the Hearing that took place on December 12, 2012.

Instead of confronting the factual allegations pleaded by Keerikkattil, Defendants points to *Goss v. Lopez*, 419 U.S. 565 (1975) and *Sohmer v. Kinnard*, 535 F. Supp. 50 (D. Md. 1982) to define his due process rights. In both these cases, the courts were asked to rule on what constituted due process. However, in this case, the Court need not look at case law to determine the requirements for due process since UMBC explicitly defines and publishes them on its website at www.umbc.edu/sjp/dueprocess.html. See also ECF No. 2-1 at pp. 7-8, 13-15 and ECF No. 1-7. Hence, this Court would need only evaluate if the Defendants failed to follow their own explicitly defined due process rights to determine a due process violation. Plaintiff can show and has shown in ECF No. 2-1 that the Defendants acted with complete disregard to their own explicitly defined and published due process requirements in this case.

Adding on to the facts stated in prior briefs, there is no evidence that the Appellate Board ever met to discuss Keerikkattil's appeal besides Tkacik's current claim in his affidavit. Keerikkattil had criticized Cullen extensively in his appeal. For this reason one would expect UMBC to be transparent with its appellate process. Rather, it held its Appellate Board in extreme secrecy and failed to maintain any record bringing into question the validity of Defendants' claim that the Appellate Board upheld the Hearing Board decision. *See Board of Regents v. Roth, 408 U.S. 564,* 584 (1972) ("[W]here the State is allowed to act secretly behind closed doors and without any notice to those who are affected by its actions, there is no check against the possibility of such "arbitrary action.") (quoting *Slochower v. Board of Educ.*, 350 U.S. 551, 559 (1956)).

14

Further, presentation of evidence to the decision-making body outside the presence of the accused can be a due process violation. *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1988). Ex parte conversations are a due process violation if "the integrity of the process and the fairness of the result" is tainted by the communication. *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 35 (D. Maine 2005).

Tkacik in his affidavit (ECF No. 11-1 at p. 6) claims that Appellate Board was constituted by Davonya Hall. It is important to note that Hall is Cullen's Deputy and directly reports to him. Where an appeal is supervised by a person involved in the underlying decision, even if not directly handled by that person, due process is denied. *See Keating v. City of Miami*, 598 F.3d at 763-64; *see also Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180-81 (11th Cir. 2009). UMBC's decision to designate Hall to constitute the Appellate Board, as claimed by the Defendants, is a direct due process violation.

For the reasons stated above and explained in detail in ECF No. 2-1, **Count I (42 U.S.C. § 1983: Fourteenth Amendment Due Process)** should survive dismissal.

### VIII. Keerikkattil states a valid claim for First Amendment violation

Here the Plaintiff would address his First Amendment claims that:

- The Plaintiff was retaliated with more severe sanctions because he questioned the integrity and fairness of UMBC's Student Judicial Process against him.
- The Plaintiff was subjected to sanctions for conduct protected under the First Amendment.

Regarding the first claim, there is no more evidence needed that Dillon's own words at the hearing. Dillon openly stated during closing arguments that he initially was looking for a six month suspension but then wanted an indefinite suspension and campus ban since Keerikkattil challenged his and De's claims during the Hearing. The Defendants can listen to this in their copy of the

hearing maintained at the Office of Student Judicial Programs or Keerikkattil can point this to them from his recording. The Plaintiff strongly believed that he had the right to defend himself and vigorously contested their claims. Also, Keerikkattil had also written to Hrabowski and Young about Cullen's and Dillon's conduct and questioning their impartiality. Cullen and Dillon were unhappy that he wrote to their bosses. So Cullen was more than glad to severely punish Keerikkattil with the harshest sanctions. In other words, had Keerikkattil sat there as a "dummy" during the hearing, he would have only got a 6 month suspension instead of over one year to indefinite suspension, ban from UMBC Campus till 2016 and 100 hours of Community Restitution.

Defendants' have not and cannot prove that Plaintiff ever engaged in any conduct at UMBC that would not be protected under the First Amendment. Also, Defendants' will not be able to prove that the Plaintiff stalked De besides in UMBC's Kangaroo Court where the Defendants' have absolute control. It didn't even take 5 minutes for an experienced District Judge to throw out De's Peace Order petition and that too ex parte. That in itself is a testament to De's credibility. The trigger for sanctions against Keerikkattil has been De's claim to UMBC Police that she was threatened by Keerikkattil by saying "hello" and inquiring how she was doing. For the sake of argument, let's assume her claim to be true. No one with common sense would find "hello" and "how are you doing" to be a threat. Further, the Supreme Court has defined "true threats" as only "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359; 123 S. Ct. 1536, 1548 (2003). Even if we lower the bar and apply the precedent for harassment in educational setting, the Supreme Court held in *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999) that for speech to be considered harassment in the educational setting, it must be "so severe, pervasive, and objectively offensive that it

16

effectively bars the victim's access to an educational opportunity or benefit." Defendants have not and will not be able to prove that "hello" and "how are you doing" were so severe, pervasive, and objectively offensive that it barred De from continuing her education.

The sanctions against Keerikkattil have been the consequence of UMBC's unconstitutionally vague and overbroad Honor Codes that penalize constitutionally protected activity. Some of these Codes have been taken down in the past (*see Rock for Life-UMBC v. Hrabowski*, 594 F. Supp. 2d 598, 603 (D. Md. 2009)) and more will be invalidated in future when they will come across students who are willing to stand up and fight for their rights. Moreover, there is a consistent string of legal precedent, dating back more than 20 years, holding that broadly written public university harassment policies and other similar speech codes are unconstitutional. *McCauley v. University of the Virgin Islands*, 618 F.3d 232 (3d Cir. 2010) (striking down hazing/harassment policy and prohibition on "emotional distress"); *DeJohn v. Temple University*, 537 F.3d 301 (3d Cir. 2008) (sexual harassment policy); *Dambrot v. Central Michigan University*, 55 F.3d 1177 (6th Cir. 1995) (discriminatory harassment policy); *College Republicans at San Francisco State University v. Reed*, 523 F. Supp. 2d 1005 (N.D. Cal. 2007) (civility policy); *Roberts v. Haragan*, 346 F. Supp. 2d 853 (N.D. Tex. 2004) (prohibition on "insults, epithets, ridicule or personal attacks"); *Bair v. Shippensburg University*, 280 F. Supp. 2d 357 (M.D. Pa. 2003) (prohibition on "acts of intolerance"); *Booher v. Northern Kentucky University Board of Regents*, No. 2:96-CV-135, 1998 U.S. Dist. LEXIS 11404 (E.D. Ky. July 21, 1998) (sexual harassment policy); *UWM Post, Inc. v. Board of Regents of the University of Wisconsin*, 774 F. Supp. 1163 (E.D. Wisc. 1991) (discriminatory harassment policy); *Doe v. University of Michigan*, 721 F. Supp. 852 (E.D. Mich. 1989) (discriminatory harassment policy).

For the reasons stated above and in ECF No. 2-1 at pp. 25-26, **Count II (42 U.S.C. § 1983: First Amendment Retaliation)** should survive dismissal.

## IX. UMBC's Admission Letter and Student Handbook constitute contractual relationship

Numerous federal court opinions have stated that the Student Handbook along with admission and policy materials constitute contractual relationship between the student and the university. See *Dinu v. The President and Fellows of Harvard College*, 56 F.Supp.2d 129, 131 (D.Mass. 1999) (District Court, applying Massachusetts law, held that provisions of college handbook govern contractual relationship between college and student); *Guckenberger v. Boston Univ.*, 957 F.Supp. 306, 307 (D.Mass. 1997) (brochures, policy manuals and other advertisements from Boston College formed the basis of contractual agreement between the University and the student to provide certain educational opportunities); *Mangla v. Brown University*, 135 F.3d 80, 83 (1st Cir. 1998) (student-college relationship essentially contractual in nature; terms of contract include statements in student manuals and registration materials); *Russell v. Salve Regina College*, 890 F.2d 484, 489 (1st Cir. 1989), reversed on other grounds, 499 U.S. 225 (1991), reinstated 938 F.2d 315 (1st Cir. 1991) (relationship between student and university governed by state contract law theories); *Holert v. University of Chicago*, 751 F.Supp. 1294, 1300 (N.D.Ill. 1990) (under Illinois law university and students have a contractual relationship generally set forth in university catalogues and manuals); *Fellheimer v. Middlebury College*, 869 F.Supp. 238, 242 (D.Vt. 1994) (under Vermont law college is contractually bound to provide students with procedural safeguards promised in student handbook); *Merrow v. Goldberg*, 672 F.Supp. 766, 774 (D.Vt. 1987) (under Vermont law relationship between student and college contractual in nature, contract terms being set forth in the policies and publications of the institution); *Corso v. Creighton University*, 731 F.2d 529, 532-533 (8th Cir. 1984) (relationship between student and university is contractual, and

statements in student handbook, that student was entitled to a hearing in cases of serious penalties, required a hearing); *Mahavongsanan v. Hall*, 529 F.2d 448, 449-450 (5th Cir. 1976) (under Georgia law student has contractual right to enforce university rules); *Williams v. Howard University*, 528 F.2d 658, 660, 174 U.S.App. D.C. 85 (D.C. Cir. 1976), cert. denied, 429 U.S. 850 (1976) (a cause of action for specific performance of a contract between a college and its students is permissible); *Peretti v. Montana*, 464 F.Supp. 784, 786-788 (D.Mont. 1979) (under Montana law, students have contract with university with specific terms found in university bulletin and other publications; other reasonable contractual terms implied, citing at 464 F.Supp. 787 numerous decisions from other jurisdictions to the same effect), reversed on other grounds, 661 F.2d 756 (9th Cir. 1980).

The disparity in the positions of the parties makes applicable the established doctrines of contract law that the interpretation of the contract must be based upon the reasonable expectations of the weaker party, specifically, the student. See *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998); *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978); *Dinu v. President and Fellows of Harvard College,* 56 F.Supp.2d 129, 131 (D.Mass. 1999); *Giles v. Howard University*, 428 F.Supp. 603, 605 (D.DC. 1977).

Keerikkattil was provided with an Admission Letter signed by a state employee on behalf of UMBC along with the Student Handbook when he was admitted to UMBC and as such would constitute a valid contract.

Besides, Md Code § 12-104 of the Education Article does not affect the applicability of Md. Code Ann., State Govt. § 12-201 and 12-202 to the University of Maryland in contract actions. S.G. § 12-202 requires the claimant to file his suit against the State and/or its covered units or officers within one year of the date on which the claim arose, or the completion of the contract that

19

gave rise to the claim. In this case, Keerikkattil did satisfy this requirement by filing his suit within one year.

For the reasons stated above and in ECF No. 2-1, **Count III (Breach of Contract)** should survive dismissal.

## X. FRCP permits the Plaintiff to plead Promissory Estoppel along with Breach of Contract

Federal rules freely permit pleading alternative theories of recovery, even if inconsistent. Fed. R. Civ. P. 8(d)(3). Where the existence of a contract covering the subject matter is potentially disputed by the Defendants, as in the case here, pleading alternative contract and quasi-contract claims is a common and acceptable practice. See *Swedish Civil Aviation Admin. v. Project Mgmt. Enters.*, Inc., 190 F. Supp. 2d 785, 792 (D. Md. 2002) ("'It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails.... Until an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature.'") (quoting *Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., Inc.*, 982 F. Supp. 873 (S.D. Fla. 1997)). Therefore, **Count IV (Promissory Estoppel)** should also survive dismissal.

## XI. Defendants' actions undeserving of qualified immunity

Denial of the defense of qualified immunity is entirely appropriate and, in fact, required when a public official acts as Defendants did here, willfully abandon the constrictions of binding legal precedent in a determined effort to deprive another of constitutional rights. Granting Defendants like Cullen and Dillon qualified immunity will have a profound effect on college administrators' sense of obligation to safeguard students' constitutional rights. If students like Keerikkattil are unable to vindicate their rights after suffering abuses like those before the court,

universities across the country will be free to flout constitutional obligations with impunity. If this result is permitted, both our public system of higher education and society at large will suffer.

In order for the Plaintiff to claim damages under § 1983, he must establish not only that the Defendants deprived him of a constitutional right, but also that the Defendants, state actors sued in their individual capacities, are undeserving of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 808-09, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Whether a government official is deserving of qualified immunity from personal liability is a two-pronged inquiry that requires the court to determine: (1) whether the official violated a constitutional right; and if so (2) whether the right was "clearly established" at the time of its violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). However, the Supreme Court overruled Saucier in part to hold that the traditional two-step inquiry into qualified immunity is not mandatory; "the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 813, 818, 172 L. Ed. 2d 565 (2009). Cullen knew about Keerikkattil's due process rights when he intentionally chose to deny them. Besides, Cullen and Dillon were well aware that it was clear First Amendment retaliation when they decided to punish Keerikkattil for openly speaking out against them. Dillon even lied to the Hearing Board stating the De is "100 % credible" even though he had made no effort to investigate the claims made by her. This along with other facts stated by the Plaintiff in ECF No. 2-1, Cullen and Dillon acted with ill-will and wrongful motive in concert with De to deprive the Plaintiff of his constitutional rights. Therefore, they should be deprived of the shield of qualified immunity and be held individually liable for their actions.

21

## XII. Negligent Training and Supervision

Negligent training and/or supervision of employees "is a cause of action against an employer when an employee causes injuries to the plaintiff and the employer was negligent in hiring, retaining, or supervising the employee." Paul Mark Sandler & James K. Archibald, PLEADING CAUSES OF ACTION (Fifth Edition), § 3.45, p. 266 (emphasis added). Defendants Hrabowski (as President of UMBC) and Young (as Vice President of UMBC for Student Affairs) hired Cullen as Director of Student Judicial Programs knowing very well that he has no formal legal training or judicial experience adjudicating criminal law.[3] However, Cullen is tasked with defining and adjudicating allegations that are considered felonies under the law including assaults, sexual assaults, rapes etc. He has not and cannot explain the basis for the sanctions against the Plaintiff besides stating that they were consistent with sanctions for violations of Rule 2. In other words, he believes that a student found responsible for drug overdose or indecent exposure under Rule 2 should get the same sanctions as someone found responsible for rape, which lacks common sense. Violations of procedural due process and arbitrary and capricious sanctions are a natural outcome when UMBC appoints an unqualified and incompetent person such as Cullen to head its Office of Student Judicial Programs.

For a Plaintiff to maintain a claim against a supervisor under § 1983, he would need to show (1) that the supervisor had actual or constructive knowledge that his subordinate[s were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . Plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional

---

[3] www.linkedin.com/in/jcullenphd

injury suffered by the Plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Keerikkattil had written to Hrabowski and Young expressing his concerns regarding Cullen. In spite of knowledge of the fact, they were deliberately indifferent to the Plaintiff causing him constitutional injury. Further, Young did have an opportunity to remedy the constitutional injury inflicted on the Plaintiff. According to the Code of Student Conduct, Young is tasked with authorizing the Appellate Board (ECF No. 1-6 at p. 4). In spite of all the allegations against Cullen, she assigned the task of constituting the Appellate Board to none other than Hall, in effect giving Cullen the control of the Appellate process too. Further, Hrabowski and Young never bothered to investigate the allegations against Cullen. Hence Hrabowski and Young should be held liable for negligence in hiring and supervising Cullen and therefore **Count VIII (Negligent Training and Supervision of Employees)** should survive dismissal.

## XIII. Intentional Infliction of Emotional Distress

To claim intentional infliction of emotional distress, a plaintiff would need to allege that the defendant's conduct was: (1) intentional or reckless, (2) extreme and outrageous, (3) causally connected to his emotional distress, and (4) the distress caused was severe. *Baltimore-Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 701 (D. Md. 2003) (citing *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977)). It is extreme and outrageous for a sworn police officer like Dillon to commit perjury by lying to the Hearing Board claiming De's statements to be "100% credible" that the Plaintiff harassed/stalked her when he did not even bother to investigate them. It is extreme and outrageous for Cullen as the Director of Student Judicial Programs to intentionally interfere with the hearing process to maliciously impose sanctions against the Plaintiff. The Defendants' actions have caused the Plaintiff severe emotional distress including but not limited to depression, anxiety,

23

sleeplessness, loss of appetite and extreme weight loss. Hence, **Count IX (Intentional Infliction of Emotional Distress)** should survive dismissal.

### XIV. Civil Conspiracy and Malicious Use of Civil Process

Under Maryland law, civil conspiracy requires "1) [a] confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) [a]ctual legal damage resulting to the Plaintiff." *Lloyd v. General Motors Corp.*, 397 Md. 108, 154 (2007) (citing *Van Royen v. Lacey*, 262 Md. 94, 97-98 (1971).

To state a claim for malicious use of civil process under Maryland law, a Plaintiff would need to allege that "(1) a prior civil proceeding was instituted by the Defendant; (2) with malice; (3) without probable cause; (4) termination in favor of the Plaintiff; and (5) damages were inflicted upon the Plaintiff by arrest or imprisonment, seizure of property, or other special injury." *Fontell v. Hassett*, 2011 WL 4632579, at * 5 (D. Md. Oct. 3, 2011) (citing *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 205 (Md. 1985)).

Cullen and Dillon along with De conspired to maliciously ban the Plaintiff from campus and impose sanctions against him. Dillon worked with De to solicit false testimony against the Plaintiff, which many of them have since recanted. Keerikkattil sent Cullen a letter with evidence that contradicted De's claims. Cullen in turn leaked the letter to Dillon (according to his own admission) who in turn forwarded it to De resulting in spoliation of evidence. Cullen's attempts to influence the outcome of the hearing have been explained in detail before and does not need further repetition.

Dillon and De wanted to find Keerikkattil guilty at any cost so that they could use the outcome of the hearing in De's defense at the Circuit Court. Dillon, De and Cullen met secretly in a closed room just before the hearing and soon after De was made a "victim"[4], even though none of the allegations against the Plaintiff meet that criteria. As planned, Cullen would find Keerikkattil responsible and De and Dillon would use it in Court in De's defense using the loophole in FERPA. Further, Dillon appeared twice as a witness for De in his official capacity committing perjury for De in front of state judges even though the case against De had nothing to do with UMBC. It still baffles the Plaintiff why a police officer like Dillon was willing to put his reputation on the line by lying for De. See also ECF No. 2-1 for additional details. In short, the Plaintiff can and will show that Cullen, De and Dillon acted in concert with one another to cause injury to the Plaintiff through tortious and unlawful methods.

The student judicial process against the Plaintiff was instituted with malice and with no probable cause. Neither was Cullen able to provide any specificity of allegations nor did they present any evidence to support their ambiguous claims. Defendants' instituted proceedings for stalking which requires proof of threat of bodily injury, assault, sexual assault, rape, false imprisonment or death. Since they could not establish this they found the Plaintiff stating that he "engaged in a **course of conduct** directed towards UMBC Student Soutry De that would cause a reasonable person to **feel threatened** and fear for their immediate **safety**" (ECF No. 7 at p. 5) (emphasis added). Specifically, UMBC never states that the Plaintiff threatened De, a requirement for *mens rea*. It also does not define the terms "course of conduct" or "safety" anywhere in its

---

[4] "Victim" under FERPA refers to victim of crime of violence or nonforcible sex offense defined under 18 USC § 16. 20 USC §1232g(b)(6)(B)-(C) states that the "final results" of campus disciplinary proceedings involving crimes of violence or nonforcible sex offenses are not prohibited from release under the Family Educational Rights and Privacy Act (FERPA).

Code of Student Conduct. In other words, UMBC had failed to establish stalking against the Plaintiff. Also, the Defendants never brought charges against De when there was not only probable cause but also material evidence that establishes guilt.

There is absolutely no doubt Defendants instituted the proceeding against the Plaintiff with malice and without probable cause and that they failed to establish stalking against the Plaintiff but even then inflicted serious constitutional injury on the Plaintiff. For the reasons stated above and in ECF No. 2-1, **Count X (Civil Conspiracy) and Count XI (Malicious Use of Civil Process)** should survive dismissal.

## XV. Defamation

Defendant Dillon contacted people on Keerikkattil's Friends List on Facebook stating that Keerikkattil has harassed/stalked De even when he knew that his claims were false, ruining the Plaintiff's reputation and standing in the community. Dillon was a willing participant aiding and abetting De's defamation of Keerikkattil in front his friends and colleagues. Further, the Defendants falsely stated De to be a victim of sexual assault to secure pro bono legal assistance for her from Sexual Assault Legal Institute (SALI), while being fully aware of the falsity of their claims. Therefore, **Count XII (Defamation)** should survive dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiff, Ranjith Keerikkattil respectfully requests that this Court deny Defendants' motion to dismiss the Plaintiff's complaint against them.

Respectfully submitted,

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
Telephone: (443) 690-1031
rkeerikkattil@gmail.com

*Plaintiff, pro se*