## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RANJITH KEERIKKATTIL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: WMN-13-02016 |
| FREEMAN A. HRABOWSKI, et al., | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* ooo0ooo \* \* \* \*

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Ranjith Keerikkattil, hereby submits his reply brief in support of his motion for preliminary injunction.

### INTRODUCTION

Plaintiff, Ranjith Keerikkattil, filed his motion for preliminary injunction on July 12, 2013 seeking an order (i) requiring UMBC to remove the judicial hold on his account and enable him to register for classes, (ii) requiring UMBC to remove the campus ban against him, and (iii) requiring UMBC to remove the "Disciplinary Suspension" notation from his transcript.

Defendants Freeman A. Hrabowski, Nancy L. Young, Jeffrey E. Cullen, Paul Dillon, William E. Kirwan, and the Board of Regents of the University System of Maryland filed their response in opposition to his motion for preliminary injunction on July 29, 2013. Plaintiff, in his reply brief reinforces the arguments he made in his opening brief (ECF No. 2-1) and counters the

arguments made by the Defendants in their opposition brief (ECF No. 7). The Plaintiff also responds to observations made by this Court in ECF No. 12.

## SUPPLEMENTAL FACTS

Though the Plaintiff need not repeat the facts here, he must clear up the misconceptions and omissions in Defendants' opposition brief. Keerikkattil and De used to work together. In April/May 2013, De asked Keerikkattil out for movies and invited him home for lunch. Keerikkattil politely refused her offer and De looked upset. Ever since then, De has been making false and misleading statements against the plaintiff causing him severe emotional distress. He even quit his job to avoid contact with De. Still that did not help things. De tried to make contact with Keerikkattil multiple times during the Summer of 2012. On September 22, 2012, De tried to make contact with Keerikkattil asking him "Hello" and "How are you doing?" Though De omitted this fact during the hearing, she did confirm this in the Circuit Court for Baltimore County, where she was accused of harassing, stalking and threatening Keerikkattil. Keerikkattil ignored her and walked away. On October 1, 2012, De filed a complaint with UMBC Police that Keerikkattil threatened her by saying "hello" and how she was doing on September 29, 2012 (ECF No. 11-1 at p. 8). Interestingly, De did not file the complaint on September 29, 2012, rather waited two days to file this complaint. Though the claim of threatening by "hello" and how she was doing looks rather silly, she did not contact UMBC Police immediately because an immediate investigation would have proved her claims baseless. Besides, De waited till the close of Court on Monday October 1, 2012 to file her Peace Order petition. She knew very well that by delaying a filing till the end of Court hours, she could easily get an Interim Peace Order against Keerikkattil that does not require a Judge's order rather than a Temporary Peace Order that requires one. Anyone who applies for an Interim Peace Order and pays the filing fees gets them since they do not require a

2

Judge's approval and hardly lasts 24 hours. As expected, on October 3, 2012 at 9 AM, a Judge heard De's petition, dismissed it ex parte and specifically stated that Keerikkattil is not threatening to her in any form. But, De in the meantime, armed with her Interim Peace Order, persuaded UMBC to ban him from campus on October 2, 2012.

In order to make Keerikkattil look more threatening and to make a false claim of stalking on the Police Report, De stated that on more than one occasion, in July and August 2012, she saw Keerikkattil sitting in the Physics building, looking at her and that Keerikkattil followed her home in April 2012 (ECF No. 7 at p. 3). At the Hearing held on December 12, 2012, De changed her story to she saw Keerikkattil at a public space working on his computer and she did not know where his eyes were looking. Further, Keerikkattil asked De during cross-examination at the Circuit Court why she did not report this incident to UMBC Police then. Her response was that Keerikkattil did not try to make contact with her and hence she did not feel threatened. Keerikkattil will be able to present Circuit Court transcripts to substantiate his claim. Similarly, De's claim of Keerikkattil followed her home in April 2012 was not raised until October 2012 and De has not provided any evidence to substantiate her claims. See ECF No. 2-1 at pp. 22-24 for a detailed analysis on De's claims.

Tkacik in his Affidavit (ECF No. 11-1 at p. 2) stated that an Interim Peace Order was entered in favor of De. However, he skillfully omits the fact that the Interim Peace Order was revoked by a District Judge soon after. He also omits certain important pages from De's Peace Order in Exhibits B & C attached with his affidavit. Those pages missing in ECF No. 11-1 at pp. 11-13, 15-16 are attached as Ex. A.

In ECF No. 11-1 at p. 2, Tkacik claims that he banned Keerikkattil as a non-student from the buildings and grounds of UMBC, pursuant to Md. Code Ann., Education, § 26-102. However,

Tkacik didn't meet the burden of proof to establish that Keerikkattil acted in a manner that disrupts or disturbs the normal educational functions of the institution. Even, at the October 9, 2012 meeting, Tkacik had no evidence to prove that Keerikkattil acted in a manner that disrupted or disturbed the normal educational functions of UMBC besides De's Peace Order petition, which Keerikkattil pointed out with supporting evidence that Interim Peace Order was revoked by the District Judge. Further, Keerikkattil advised Tkacik and Dillon to review the surveillance recordings at the UMBC Library on September 29, 2012. Keerikkattil was not interested in picking up a fight with De and UMBC over § 26-102. He was just interested in continuing his education. So, even though Keerikkattil disagreed with Tkacik's assessment, he nevertheless decided to stay away from UMBC Campus till the beginning of Spring 2013 semester. Keerikkattil did specifically ask Tkacik if this ban would have any impact on registering for classes and continuing his education. Tkacik stated that there would be no impact on registering for classes and once he registers for classes, Keerikkattil would be outside of the jurisdiction his office. Tkacik never stated De's claims against him would be subject to review under the jurisdiction of SJP nor did he state Keerikkattil could be suspended and that any suspension would be recorded on his transcript.[1]

What Keerikkattil did not know that De along with Dillon was working behind the scenes to ensure that Keerikkattil would not be able to continue his studies at UMBC. They persuaded Cullen to place a judicial block on Keerikkattil's account to prevent him from registering for classes. When Keerikkattil became aware of the judicial block, De and Dillon persuaded Cullen to suddenly flip his status from non-student to student and charge him under its Codes of Student

---

[1] Defendants also claim in their opposition brief (ECF No. 7 at p. 4) that Keerikkattil was banned pursuant to Section 20-106. It is unclear what the Defendants intend here since there is no § 20-106 in Md. Code Ann., Education.

4

Conduct knowing very well that they could easily prosecute Keerikkattil under UMBC's Kangaroo Court System aka Student Judicial Programs where Cullen has almost dictatorial powers.

As Tkacik states in ECF No. 11-1 at p. 4, a Pre-Hearing Conference was held on November 5, 2012 in which Keerikkattil, Cullen and Dillon participated. Keerikkattil asked Cullen and Dillon for evidence that support De's claims. They said that they have none. Keerikkattil also asked for specificity of charges as promised by SJP under Student Due Process Rights. They said they have no additional specifics. Keerikkattil also asked Cullen how he could be subjected to these charges if Tkacik considered him a non-student. Cullen looked confused. Dillon began whispering into Cullen's ears. Cullen asked Keerikkattil to go out of the room. He was invited back in after about 30 minutes later and was served a unilateral one-sided No Contact Order presuming him guilty even before the hearing. Interestingly, the No Contact Order specifically invokes Educ. § 26-102 referring Keerikkattil as a non-student even when Dillon, De and Cullen initiated Student Judicial Proceedings against Keerikkattil stating he is considered as a student. Tkacik also fails to mention that Cullen destroyed the audio recording of the Pre-Hearing Conference that would have incriminated Cullen and Dillon (ECF No. 1-18 at p.1, ECF No. 2-1 at pp. 26-27).

Tkacik's statements in his affidavit gives the presumption that Keerikkattil was provided with a fair hearing in front of an unbiased and competent Hearing Board which was far from true. Keerikkattil has already explained this in detail in ECF No. 2-1 and will introduce recording of his hearing as evidence. The sanctions were not imposed by the Hearing Board but by Cullen. Keerikkattil has on record all the conversations between Cullen and Hearing Board because he knew very well that Cullen would act maliciously to interfere in deliberations to obtain the outcome he wants which was to find Keerikkattil responsible at all costs.

Based on information and belief, neither did the Appellate Board meet on January 11th nor did they uphold the sanctions against Keerikkattil. It is also interesting to note that as UMBC claims, the appeal was adjudicated by Davonya Hall, who is Cullen's deputy even after Keerikkattil raised serious Due Process violations against Cullen.

Keerikkattil also presented evidence that points to violations of Md. Criminal Law Code Ann. § 3-802 (stalking), § 3-803 (harassment), § 9-501 (providing false statements to law enforcement) and Md. Courts and Judicial Proceedings Code Ann. § 3-1503(d) (providing false information on peace order petition) by De to the UMBC Office of Student Judicial Programs. These crimes by De are also prosecutable under Rule 2 (Behavior Which Jeopardizes the Health or Safety of Self or Others), Rule 7 (Acts of Dishonesty or Falsifying University Records) and Rule 12 (Violations of Federal, State, and Local Laws) of UMBC's Code of Student Conduct. However, De never was held accountable for her crimes and never had to face a Hearing Board despite Keerikkattil assuring SJP that he would testify and present evidence. Tkacik also skips this fact in his affidavit even though he was copied in many e-mails regarding this.

### ARGUMENT

To obtain a preliminary injunction, a plaintiff must establish: (1) a likelihood of success on the merits; (2) that "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) that "the balance of equities tips in his favor"; and (4) that "an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

Keerikkattil can make a clear showing that he will likely succeed on the merits at trial. Also he can establish a clear showing of irreparable harm in the absence of an injunction.

**A. The Plaintiff Can Establish a Likelihood of Success on the Merits.**

For the reasons set forth in the Plaintiff's memorandum in support of preliminary injunction (ECF No. 2-1) and his memorandum in opposition to Defendants' motion to dismiss, the Plaintiff can demonstrate a likelihood of success on the merits.

**B. The Plaintiff Can Establish that He Will Suffer Irreparable Harm If Injunctive Relief is not granted.**

Keerikkattil has sufficiently pleaded First and Fourteenth Amendment violations with supporting evidence. "[A] plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing cases); *cf. Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ("[T]he denial of a constitutional right . . . constitutes irreparable harm for purposes of equitable jurisdiction."). As the Fourth Circuit held in *Legend Night Club v. Miller*, 637 F.3d 291 (2011), albeit in the context of permanent injunctive relief, "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Id. at 302 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Ordinarily, such a threatened injury to plaintiff will "easily outweigh[] whatever burden the injunction may impose," because the government "is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Id.* at 302-03.

Hence, the Defendants' constitutional violations in itself constitute irreparable injury to warrant a preliminary injunction. Further, the Defendants state that loss of promotion is compensable through an award of monetary damages and does not constitute irreparable injury. However, the Sixth Circuit recently held in *Howe v. City of Akron* that promotion delays constitute irreparable

7

injury. *See also Johnson v. City of Memphis*, 444 F. App'x 856, 860 (6th Cir. 2011) (citing *N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 171 n.6 (6th Cir. 1989)).

## C. The Plaintiff Can Establish that the Balance of Equities Favors a Preliminary Injunction.

While the Plaintiff has clearly stated constitutional violations with supporting evidence, the Defendants base their arguments mainly on preserving the "honor" of its Honor Code aka Code of Student Conduct. This is not the first time that the Defendants have been in legal trouble because of UMBC's Honor Code. "At the preliminary injunction Hearing on August 8, 2008, Defendants informed the Court that UMBC was voluntarily changing its Code of Student Conduct, Code of Student Organization Conduct, and Residential Life policies (collectively, "Codes of Conduct") to remove the terms "intimidation," "emotional harassment," and "emotional safety" which Plaintiffs challenged as unconstitutionally vague and overbroad." *Rock for Life-UMBC v. Hrabowski*, 594 F. Supp. 2d 598, 603 (D. Md. 2009). In *Rock for Life-UMBC*, rather than defending the "honor" of its Honor Code, the Defendants merely took out the terms that it knew wouldn't be able to defend in court. UMBC's Code of Student Conduct is nothing but a collection of unconstitutionally vague and overbroad terms that is used to punish helpless students. In fact, during the Hearing, the Hearing Board specifically asks Cullen for the definition of "health" and "safety" and he himself said to the Hearing Board that these terms were "nebulous" quoting the *Rock for Life-UMBC v. Hrabowski* lawsuit. The Plaintiff can pinpoint this in his recording of the hearing. Tkacik himself admitted that there were multiple versions of Code of Student Conduct that contradicted each other (ECF No. 1-21, pp. 5-6). Further, Tkacik noted that Keerikkattil's discovery led to removal of one of the multiple versions it had. Besides, at the hearing, Cullen gives the Hearing Board a version of Code of Student Conduct that explicitly had Rule 2 missing even when they were asked to

adjudicate if Keerikkattil violated Rule 2 or not. So, if UMBC's interest is in preserving the "honor" of its Honor Code, it should invest its time and effort in weeding out the unconstitutionally vague and overbroad rules from the code rather than punishing Keerikkattil for pointing out the serious deficiencies of its Honor Code system.

Defendants have not and will not be able to prove that Keerikkattil acted in a manner that disrupted or disturbed the normal educational functions of UMBC, an essential requirement to ban him by imposing Md. Code Ann., Education, § 26-102. Tkacik never cared about any evidence when he banned Keerikkattil besides accepting De's lies as truth. The event that triggered the campus ban was De's claims that Keerikkattil threatened her by saying "hello" and how she was doing on September 29, 2012 (ECF No. 11-1 at p. 8). Keerikkattil specifically asked Tkacik and Dillon to review the library surveillance recordings that would have proven her claims to be false, which they ignored.

In *Davis v. Monroe County Board of Education*, 526 U.S. 629; 119 S. Ct. 1661 (1999), the Supreme Court held that for speech to be considered "hostile environment" harassment in the educational setting, it must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. Anyone with common sense would find that "hello" and "how are you doing" does not constitute speech that is so severe, pervasive, and objectively offensive that it would effectively bar De's access to education.

The Supreme Court has defined "true threats" as only "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359; 123 S. Ct.

1536, 1548 (2003). None of the claims made by De or UMBC state any claims that constitute a "true threat". In that regard, they don't even state any claim that Keerikkattil ever threatened De.

Even if this Court were to find UMBC's interest in protecting the safety of its students compelling, which in this case is threatening students by saying "hello" and "how are you doing", the Defendants must employ the least restrictive means available to further that interest. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000). UMBC had much less restrictive ways to achieve this interest rather than suspending and banning the Plaintiff, even though their interest in this case appears to be rather silly.

Also, the Defendants state §26-102 (permitting Maryland educational institutions to bar unauthorized persons from campus) implying that Keerikkattil was an unauthorized person on campus. However, Keerikkattil was formally admitted as a graduate student into UMBC (Ex. B), had a UMBC graduate student ID (Ex. C) and even a valid UMBC student parking permit (Ex. D). So UMBC's claims that Keerikkattil was an unauthorized person on campus is baseless. This is in addition to the fact that UMBC campus is open to the public.

The sanctions against Keerikkattil were based solely on claims made by De. UMBC itself admitted in its opposition briefs (ECF No. 7 at p. 2) that De is no longer a UMBC student. Further, De has been formally added as a stalker with the UMBC Police file and she had been made plainly clear that any attempt to harass or stalk Keerikkattil would result in criminal prosecution under Md. Code Ann., Crim. Law § 802 and § 803. In these circumstances, De has absolutely no reason to be on UMBC campus. This along with the fact that no other current member of the UMBC has any concerns with Keerikkattil taking classes or accessing UMBC campus shows that the Defendants' concerns regarding campus safety are moot.

Moreover, Dillon himself had stated during the hearing that he initially wanted a 6 month suspension but then wanted a longer suspension because Keerikkattil chose to question his claims. In other words, Keerikkattil would have been able to start classes in Fall 2013 if Cullen and Dillon did not retaliate against him.

Therefore, balance of equities favor Keerikkattil whose constitutional deprivations heavily outweigh UMBC's claim of its responsibility to enforce its vague and overbroad Honor Code or to protect its campus against non-existent threats.

**D. The Plaintiff Can Establish that the Public Interest Favors a Preliminary Injunction.**

There is absolutely no doubt that protecting constitutional rights are in public interest. The Fourth Circuit has explicitly held that "upholding constitutional rights is in the public interest." *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011). The Supreme Court has made clear that the "vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker*, 364 U.S. 479, 487; 81 S. Ct. 247, 251 (1960). *See also Healy v. James*, 408 U.S. 169, 180; 92 S. Ct. 2338, 2346 (1972) ("[T]he precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large."); *Tinker v. Des Moines Independent Community School Dist.*, 393 US 503, 511 (1969) ("In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are "persons" under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State.") Keerikkattil has shown with substantial evidence that his First and Fourteenth Amendment rights have been violated.

Defendants claim that Md. Code Ann., Education, § 26-102 serves public interest by allowing UMBC to ban from campus persons found to act in a manner that "disrupts or disturbs the normal educational functions of the institution". In order to ban a person under § 26-102, UMBC would have to prove "no lawful business to pursue" and "disrupts or disturbs the normal educational functions of the institution". Under § 26-102, "lawful business" refers to any constitutionally protected activity. *See Kirstel v. State*, 13 Md. App. 482, 284 A.2d 12 (1971); *Anderson v. State*, 12 Md. App. 186, 278 A.2d 439 (1971). See also *Dunkel v. Elkins*, 325 F. Supp. 1235, 1241 (D. Md. 1971) ("The "no lawful business to pursue" test, set forth in this section, seemingly excludes all constitutionally protected activity.") UMBC's ban against the Plaintiff would fail under § 26-102 since it has not and cannot prove that he had engaged in any conduct that is not protected under the U.S. Constitution and the burden of proving so lies with the Defendants. So public interest is furthered when institutions like UMBC are enjoined from using the cover of § 26-102 to arbitrarily ban students without proving that they engaged in conduct that is unconstitutional.

The Defendants also remain silent on the public interest served by Title IX and COMAR Title 13b. Moreover public interest and interest of UMBC community is greatly served by adding transparency to the Student Judicial Process at UMBC which currently operates under the shrouds of secrecy. Therefore, Plaintiff has satisfied the fourth prong of the test for preliminary injunctive relief.

**Plaintiff has made a good faith effort to resolve this issue administratively**

The Court noted in ECF No. 12 that there was a six month gap between Plaintiff's exhaustion of the administrative appellate process and the filing of complaint and motion for preliminary injunction. Plaintiff believes that judicial action is warranted when all other options

fail. During this period, Plaintiff filed complaints with Dept. of Education, Office of Civil Rights (OCR) and Maryland Higher Education Commission (MHEC). Both OCR and MHEC initiated investigations against UMBC and Keerikkattil waited till June for the outcome of their investigations. Also, during this time Keerikkattil contacted The Chancellor and Board of Regents of USM with his complaint. Initially they responded positively informing him that they were forwarding his complaint to the Office of Attorney General for review (ECF No. 1-21 at p. 4). Also, Tracey Jamison, Director of Articulation and Enrollment Services for USM contacted Keerikkattil informing that she would get back to him after reply from AG's office. *Id* at p. 1. However, Jamison never got back. Finding that the administrative processes involving USM, OCR and MHEC were going nowhere, Keerikkattil was left with no options other than to approach the judiciary. Interestingly, both OCR and MHEC administratively closed their complaint once they became aware of the initiation of this action.[2] See. Ex. E, F. The Court should specifically note Plaintiff's criticism of MHEC's student complaint process (Ex. F at pp. 1-2).

The Court also noted that Plaintiff had not demonstrated intent to re-enroll in the master's degree program to which he was admitted. The Plaintiff always had intent to enroll in the master's degree program. The funding for the graduate program is covered through the Education Assistance Program of his employer, General Dynamics. A copy of the Education Assistance Program is attached as Ex. G. There was an issue regarding funding that caused him to drop his classes at the last minute in Fall 2012. All the issues were resolved subsequently and the Plaintiff would have received funding for his classes from Spring 2013 onwards. If not for Defendants

---

[2] OCR states the Plaintiff could refile his Title IX claims if this Court does not make a final determination on them.

arbitrary and capricious sanctions without due process of law, the Plaintiff would have been enrolled in classes rather than litigating in federal court.

## CONCLUSION

For the reasons set forth in this brief, Plaintiff's memorandum in support of preliminary injunction and his memorandum in opposition to Defendants' motion to dismiss, the plaintiff's motion for preliminary injunction should be granted with an injunction bond set to zero.[3]

---

[3] *Maryland Department of Human Resources v. United States Department of Agriculture*, 976 F.2d 1462, 1483 n.23 (4th Cir. 1992) (stating that district court has "discretion to set a bond amount of zero where the enjoined or restrained party faces no likelihood of material harm"); 11A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1954, at 293 (2d ed. 1995, April 2011 Supp.) (stating that a "court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant").

Respectfully submitted,

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
Telephone: (443) 690-1031
rkeerikkattil@gmail.com

Plaintiff, pro se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2013, a copy of the Plaintiff's reply brief in support of his motion for preliminary injunction was served by personal delivery and electronic mail to:

Kristin P. Herber
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Fl.
Baltimore, Maryland 21202-2021
kherber@oag.state.md.us

15

## TABLE OF EXHIBITS

Ex. A          De's Peace Order Petition (Missing Pages)

Ex. B          UMBC Graduate Admission Letter

Ex. C          UMBC Graduate Student ID

Ex. D          UMBC Student Parking Permit

Ex. E          Letter from OCR

Ex. F          E-mail communication between Keerikkattil and MHEC

Ex. G          GDIT Education Assistance Policy