IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
RANJITH KEERIKKATTIL         *
                             *
v.                           *      Civil Action No. WMN-13-2016
                             *
FREEMAN A. HRABOWSKI et al.  *
                             *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Before the Court is Plaintiff's Motion for Preliminary Injunction, ECF No. 2, and a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendants Freeman A. Hrabowski, Nancy L. Young, Jeffrey E. Cullen, Paul Dillon, William E. Kirwan (collectively referred to as the "UMBC Defendants") and the Board of Regents of the University System of Maryland.  ECF No. 6.  The motions have been fully briefed by the parties and are ripe for review.  Also pending is Plaintiff's Motion to Strike Defendant Soutry De's Affirmative Defenses, ECF No. 18, to which no Opposition was filed.  For the reasons that follow, the Court determines that no hearing is necessary, Local Rule 105.6, the motion to dismiss will be granted in part and denied in part, the motion for preliminary injunction will be denied, and the motion to strike will be granted.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On October 1, 2012, Defendant Soutry De,[1] who was at that time a student at the University of Maryland, Baltimore County ("UMBC"), filed a report with the University Police against Plaintiff, Ranjith Keerikkattil, alleging that he was stalking her.  Specifically, De alleged that Plaintiff, who was her former co-worker, followed her home in April 2012, showed up to her home unannounced in June 2012, looked at her multiple times while in the Physics building, and, most recently, approached her in the library and said "Hello. How are you doing?"  De was very upset, and stated that she felt uncomfortable and feared that she was being stalked.  De petitioned for a peace order against Plaintiff with the District Court of Baltimore County that same day, and was granted an Interim Peace Order. Following a hearing on October 3, however, the peace order was dismissed.

Although Plaintiff was not enrolled in classes at UMBC at the time of De's report, he had been accepted into a UMBC graduate program in summer 2012.  On October 2, the University Counsel at UMBC, Christopher Tkacik, sent Plaintiff a letter banning him from campus as a non-student under Md. Code Ann., Educ. § 26-102, as a result of De's report.

---

[1] De did not file a motion to dismiss.  Thus, to the extent that the Motion to Dismiss is granted, it is granted only as to the UMBC Defendants and/or the Board of Regents, as specified.

Pursuant to UMBC policy, Plaintiff filed a written request for a hearing and met with Mr. Tkacik, Defendant Deputy Chief of UMBC Police Paul Dillon, De, and De's mother on October 9. Plaintiff argued that, as a student at UMBC, he could not be banned from campus under § 26-102. Tkacik explained that the ban was appropriate because Plaintiff was not registered for classes, but that, upon registering for classes, Plaintiff's status would be changed from "non-student" to "student." At that point, De's allegations would be subject to review under the Student Judicial Program. Further, Tkacik noted the possibility that Plaintiff could be suspended after review.

When Plaintiff attempted to register for Spring 2013 classes shortly thereafter, he discovered that a judicial hold had been placed on his account. As a result of his change in status, De's allegations were reviewed by the Office of Student Judicial Programs ("SJP"), headed by Defendant Jeffrey E. Cullen. On November 1, Plaintiff received notification that, due to his alleged course of stalking behavior against De, he was charged with violating Rule 2 of the Code of Student Conduct. Rule 2 generally prohibits a student from engaging in behavior that jeopardizes the health or safety of others. Plaintiff alleges that the charges "were vague and ambiguous and contained no information regarding the date and time of the

incidents that contributed to the alleged violations [of] Rule 2." Compl. ¶ 30.

At some point, De allegedly began to exhibit harassing behavior toward Plaintiff. Plaintiff sought and received a Peace Order against De in late November 2012. He alleges that, after informing UMBC that De was harassing him, no action was taken by the University. He wrote a letter to Cullen, copied to Defendants Hrabowski and Young, stating that he was worried that he was being unfairly discriminated against. In response to Plaintiff's concerns, Cullen allegedly told Plaintiff that "it is perfectly normal for Ms. De to be treated differently," Id. at ¶ 36, and that she "is more believable since she is a woman." Id. at ¶ 31.

A Pre-Hearing Conference was held on November 5, which was attended by Plaintiff, Cullen, and Dillon. At the conference, Plaintiff denied all charges against him. Plaintiff alleges that, after he asked why the charges were being applied against him, Dillon began whispering the word "ban" to Cullen, and Plaintiff was asked to leave the room. Approximately thirty minutes later, Plaintiff states that he was asked to return to the room, received a one-sided "Order of No Contact with Soutry De," and was banned, as a student, from UMBC pending an investigation of and hearing on De's allegations.

The UMBC Hearing Board met to adjudicate the allegations against Plaintiff on December 12, 2012.  Immediately prior to the hearing, Plaintiff alleges that Cullen, Dillon, and De met in a closed room and, shortly thereafter, Plaintiff received an e-mail, "minutes before the Hearing started," that De had been conferred "victim status" by Cullen[2] and that a witness, David Sweigart, would be testifying on De's behalf.  Compl. ¶¶ 37, 40. After receiving the e-mail, Plaintiff allegedly requested that the hearing be rescheduled and that he wanted an attorney to be present.  Cullen stated that the hearing would proceed regardless of his presence.

Cullen served as advisor at the hearing.  Pursuant to UMBC's policies, Plaintiff was permitted to bring witnesses, make statements in his defense, and ask questions of the witnesses.  Plaintiff alleges that Cullen interrupted him multiple times during the hearing, prevented effective cross-examination of the witnesses, provided his own definition of Rule 2 rather than providing the Hearing Board with a copy from the Student Handbook, and unilaterally determined the appropriate sanction.  Additionally, he contends that Dillon

---

[2] Plaintiff asserts that "victim status" referred to the definition of "victim" under the Family Education Rights and Privacy Act ("FERPA"), and therefore classified De as victim of a "crime of violence" or "nonforcible sex offense."  He states that such a status would permit disclosures that would otherwise be prohibited under FERPA.

testified that, although he originally sought a six-month
suspension for Plaintiff, he instead wanted an indefinite
suspension because Plaintiff had challenged his claims.  The
Hearing Board deliberated in private, and determined that there
was sufficient evidence to find that Plaintiff engaged in a
course of conduct toward De that would cause a reasonable person
to feel threatened and fear for their immediate safety, and
thus, Plaintiff was in violation of Rule 2.  As a result,
Plaintiff was suspended, effective December 14, 2012.  Under the
terms of his sanctions, Plaintiff may reapply for Spring 2014
classes, but no sooner.  Additionally, Plaintiff is no longer an
enrolled student; is banned from the UMBC campus until December
14, 2015, or until he regains student status, whichever is
sooner; has a "Disciplinary Suspension" notation on his
transcript; and must perform 100 hours of community restitution.
Plaintiff appealed to the Appellate Board.

The Appellate Board, with Davonya L. Hall, Assistant
Director of SJP as Conduct Officer, convened on January 11,
2013.  The Appellate Board upheld the findings and sanctions of
the Hearing Board, and found that the Hearing Board did not
substantially depart from or deny rights or provisions in the
Code of Student Conduct.

As a result of the proceedings and suspension, Plaintiff
alleges that he has suffered mental anguish, severe emotional

distress, injury to reputation, past and future economic loss, loss of educational opportunities, and loss of future career prospects.  For example, he asserts that, in order to defend against De's allegations, he had to decline a job offer.

Proceeding pro se, Plaintiff filed suit against, both individually and in their official capacities, Freeman A. Hrabowski, President of UMBC; Nancy L. Young, Vice-President for Student Affairs at UMBC; Jeffrey E. Cullen, Director of the Office of Student Judicial Programs at UMBC; Paul Dillon, Deputy Chief of Police at UMBC; William E. Kirwan, Chancellor of the University System of Maryland on behalf of University of Maryland, Baltimore County; and the Board of Regents of the University System of Maryland.  De is also a named defendant. Plaintiff asserts the following twelve counts: (1) violation of due process under 42 U.S.C. § 1983; (2) First Amendment retaliation under 42 U.S.C. § 1983; (3) breach of contract; (4) promissory estoppel; (5) negligence; (6) negligence per se; (7) gross negligence; (8) negligent training and supervision; (9) intentional infliction of emotional distress; (10) civil conspiracy and concert of action; (11) malicious use of civil process; and (12) defamation.  Plaintiff seeks a preliminary and permanent injunction restraining enforcement of UMBC's sanctions, an order declaring that the Defendants violated his right to due process, the expungement of all University records

7

relating to the disciplinary proceeding, an order requiring the University to update its records to reflect that the Plaintiff is in good standing without a disciplinary record, compensatory and punitive damages, and attorneys' fees.

## II. <u>MOTION TO DISMISS</u>

The Board of Regents and UMBC Defendants have moved to dismiss all claims under Fed. R. Civ. P. 12(b)(1), for a lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted.  When, as here, a defendant makes a facial challenge to subject matter jurisdiction by contending that Plaintiff failed to allege facts upon which subject matter can be based by virtue of immunity, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009) (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Therefore, "the facts alleged in the complaint are taken as true," and, if the complaint alleges sufficient facts to invoke subject matter jurisdiction, the 12(b)(1) motion must be denied.  <u>Id.</u>

Generally, in considering the sufficiency of a complaint to survive a 12(b)(6) motion to dismiss, the Court considers first whether the complaint contains "factual allegations in addition to legal conclusions."  <u>Robertson v. Sea Pines Real Estate Cos.</u>,

679 F.3d 278, 288 (4th Cir. 2012).  Specifically, a complaint

must contain "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action," without

"further factual enhancement," is not enough.  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  Secondly, the

complaint "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Twombly, 550 U.S. at 570).  In order to state a plausible claim

for relief, the factual allegations must "be enough to raise a

right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true."

Robertson, 679 F.3d at 288 (quoting Twombly, 550 U.S. at 555).

### A.    § 1983 Claims (Counts I & II)

#### 1. "Persons" Under § 1983

Defendants assert that Plaintiff's federal claims against

the Board of Regents and the UMBC Defendants in their official

capacities are barred because the Defendants are not "persons"

capable of being sued within the meaning of 42 U.S.C. § 1983.

Alternatively, Defendants claim that they are entitled to

Eleventh Amendment immunity.

Section 1983 provides, in relevant part, that "[e]very

person who, under color of any statute . . . subjects, or causes

to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." (emphasis added).  Thus, although individuals acting under color of law may be sued under § 1983, the statute does not provide "a federal forum for litigants who seek a remedy against a State," or state officials acting in their official capacities, "for alleged deprivations of civil liberties."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Because "official-capacity actions for prospective relief are not treated as actions against the State," a state official may be sued in his or her official capacity for prospective relief under § 1983.  Id. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).

Here, Plaintiff asserts claims under § 1983 against the Board of Regents,[3] in addition to the UMBC Defendants individually and in their official capacities.  Defendants allege that, because the Board of Regents is a unit of state

---

[3] Plaintiff also purports to sue the Board of Regents "individually and in their official capacity."  He does not name, however, the individual Regents as defendants, and thus the Court proceeds under the assumption that Plaintiff intends to sue the Board of Regents as an entity.  Even assuming that Plaintiff intended to sue each Regent individually, however, because he failed to allege any specific conduct by the individual Regents, his claims against them individually must fail as a matter of law.

government, it cannot be sued under § 1983, a claim which
Plaintiff does not appear to dispute.  The Court finds that,
because the Board is the governing body of the University System
of Maryland, Md. Code Ann., Educ. § 12-102(b), with members
appointed by the Governor and confirmed by the Senate, id. at
(e), it is "an instrumentality of the State" and an "independent
unit of State government."  See id. at (a)(3)-(4).  It is not,
therefore, a "person" within the meaning of § 1983, nor are its
officials, and cannot be sued under that provision.

To the extent that Plaintiff seeks prospective relief
against the UMBC Defendants in their official capacities,
however, neither § 1983 nor the Eleventh Amendment bars his
suit.  See, e.g., Cobb v. Rector & Visitors of Univ. of Va., 69
F. Supp. 2d 815, 824 (W.D. Va. 1999) (noting that federal courts
are generally empowered to "enjoin state officials to conform
their future conduct to the requirements of federal law")
(quoting Quern v. Jordan, 440 U.S. 332, 337 (1979))).  Thus, the
motion to dismiss is granted for Counts I and II in their
entirety as to the Board of Regents, and as to the UMBC
Defendants in their official capacities to the extent that
Plaintiff seeks monetary or restrospective relief.

## 2. **Qualified Immunity**

The UMBC Defendants also contend that the Motion to Dismiss
should be granted as to Counts I and II because Plaintiff failed

to state a claim for which relief can be granted. With respect to the claims asserted against them in their individual capacities, they argue that they are entitled to qualified immunity. See Graham, 473 U.S. at 166-67 (qualified immunity is only available where an official is sued in his or her personal capacity).

Qualified immunity "protect[s] government officials performing discretionary functions from civil damage suits 'insofar as [the officials'] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McVey v. Stacy, 157 F.3d 271, 276 (4th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Officials lose the protection of qualified immunity only if an official (1) violated a statutory or constitutional right of the plaintiff that was (2) "clearly established" at the time of the alleged incident such that "an objectively reasonable officer in [his or her] position would have known of the right." Id. Thus, "a trial court confronted with an assertion of qualified immunity should first determine whether the plaintiff has properly asserted a constitutional violation." American Civil Liberties Union of Md, Inc. v. Wicomico County, 999 F.2d 780, 784 (4th Cir. 1993). If he has not, then his claim necessarily fails under Fed. R. Civ. P. 12(b)(6).

### a. **Count I — Violation of Due Process**

In Count I, Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights.  Although Plaintiff's contentions within Count I are vague, he essentially claims that, by denying him "an unbiased, careful, and deliberate" disciplinary review process in which he could defend against the "false charges and accusations" against him, Defendants denied him "a meaningful opportunity to clear his name" and deprived him of his interests in his education and reputation in violation of the due process clause.  Compl. ¶¶ 83-85.

To survive Defendants' Motion to Dismiss, Plaintiff must present sufficient factual allegations, accepted by this Court as true, to state "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 145 (4th Cir. 2009) (citing Stone v. Univ. of Md. Med. Syst. Corp., 855 F.2d 167, 172 (4th Cir. 1988)).  Generally, in considering a claimed violation of due process, the Court first considers whether the claimant "was deprived of a protected interest," and, if so, what process was due.  Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).

Plaintiff contends that he has a property interest in his continued enrollment at UMBC, and a liberty interest in his reputation and future employment and educational opportunities, of which he was deprived by the school's flawed disciplinary hearing process.  Defendants, by contrast, contend that because Plaintiff was not enrolled in classes when he was originally banned from campus, he has no protectable property or liberty interest at stake.  The Court assumes, without deciding, that Plaintiff has alleged sufficiently that he possessed a constitutionally protected interest.

Assuming that due process applies, therefore, "the question remains what process is due."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  Although students are entitled to some due process protections in a disciplinary hearing, the required protections need not mirror a full-scale adversary proceeding. See Goss v. Lopez, 419 U.S. 565, 579 (1975).  Rather, academic disciplinary proceedings, where a student faces a long-term suspension, are generally conducted consistent with due process when the following four procedural elements are present:

> (1) The student must be advised, in advance of the hearing, [of] the charges against him.
> (2) He is entitled to the names and a summary of the testimony of witnesses to be used against him, although he may not be necessarily entitled to be confronted by the witnesses at the hearing.
> (3) The student has a right to be heard in his own defense and to be present and present evidence on his behalf, although this right does not necessarily

14

extend to the actual appearance before the ultimate
legal authority to administer discipline.
(4) No serious disciplinary action can be taken unless
it is based upon substantial evidence.

Sohmer v. Kinnard, 535 F. Supp. 50, 53 (D. Md. 1982) (citing

Herman v. Univ. of S.C., 341 F. Supp. 226, 230-31 (D.S.C. 1971),

*aff'd*, 457 F.2d 902 (4th Cir. 1972) (per curiam)); see also

Dixon v. Alabama Bd. of Educ., 294 F.2d 150, 158-59 (5th Cir.

1961).

Plaintiff does not allege that he did not receive the

procedural protections described above.  Rather, although

Plaintiff acknowledges that he had notice of the charges against

him, knew of the witnesses prior to the hearing, had the

opportunity to defend himself, and the Board stated that

substantial evidence existed against him, he takes issue with

the way those protections were administered.  Specifically, he

argues that the notice of the charges was insufficient, the

notice of the witnesses was untimely, the Hearing Board was

biased due to Cullen's presence, Cullen interrupted him during

cross-examination of witnesses, the allegations against him were

false, and the Appellate Board procedure, if it even occurred,

was biased.  None of these, however, violate the test laid out

above.  Although Plaintiff contends that Defendants' production

of the witness list immediately prior to the hearing is a

violation of UMBC's own stated "due process" protections,

Plaintiff has alleged a violation of his constitutional rights. Thus, it is the due process clause, and not UMBC's internal policies, that guide the Court's analysis. See Jones v. Bd. of Governors of Univ. of N.C., 704 F.2d 713, 717 (4th Cir. 1983) (noting that because "the source of procedural guarantees is to be found solely in the due process clause," a departure from a state agency's "stated or customary procedures" does not necessarily constitute a denial of due process).  The Court finds that Plaintiff had a meaningful opportunity to defend himself from the charges against him, and has thus failed to allege facts sufficient to state a claim for a due process violation.  Count I will be dismissed as to all UMBC Defendants, in both their personal and official capacities.

### b. Count II - First Amendment Retaliation

Plaintiff contends, in Count II, that Defendants, by seeking and imposing on him a more severe sanction as a result of his decision to defend himself, engaged in First Amendment retaliation.[4]  "Retaliation by a public official for the exercise

---

[4] Plaintiff argues, in his Opposition, that Defendants additionally violated his First Amendment rights by subjecting him to sanctions for conduct protected under the First Amendment, by virtue of their overly broad Code of Conduct. Even if Plaintiff had included this in his Complaint, however, it would be dismissed by this Court.  Plaintiff was subject to sanctions for alleged stalking and harassment-related conduct, which included allegedly following De to her home. As Defendants note, this is not conduct that implicates rights under the First Amendment.  See ECF No. 6-1 at 12; Texas v. Johnson, 491 U.S.

of a constitutional right is actionable under 42 U.S.C. § 1983,
even if the act, when taken for different reasons, would have
been proper." ACLU of Md., 99 F.2d at 785. A plaintiff must
show that, as a result of his or her exercise of protected
rights, he or she "suffered some adversity." Id. In the First
Amendment context, therefore, Plaintiff must state facts
alleging (1) that his conduct was constitutionally protected,
and (2) that his conduct was a "substantial," or "motivating,"
factor in the Hearing Board's decisions to impose a harsher
sanction. See Mt. Healthy City School Dist. Bd. of Educ. v.
Doyle, 429 U.S. 274, 287 (1977).

Plaintiff argues, and Defendants do not dispute, that his
defense against the disciplinary charges was constitutionally-
protected free speech. See Compl. ¶ 91, 94. He contends that
he received an enhanced sanction because of Cullen and Dillon's
frustrations with his decision to defend himself. Specifically,
he alleges that Dillon stated at the hearing that he originally
intended to seek a six-month suspension, but, because Plaintiff
"challenged his claims during the Hearing," opted instead to
pursue an indefinite suspension and campus ban. Id. at ¶ 91-92.
Plaintiff avers that these sanctions, ultimately imposed by

---

397, 403-04 (1989) (noting that only "expressive conduct"
permits invocation of the First Amendment).

Cullen, "were pretextual and had no basis or precedent other than to inflict maximum harm on the Plaintiff." Id. at ¶ 93.

Defendants urge dismissal of Plaintiff's claim, stating that, in order to prevail on his First Amendment claim, Plaintiff must show that "but for his constitutionally protected speech, he would not have been suspended." ECF No. 6-1 at 12. They contend, in essence, that the imposition of an increased sanction, where a sanction of a lesser duration was nonetheless supported by the evidence, is insufficient to support a First Amendment retaliation claim. Id.

The Court determines that Plaintiff has stated a claim for First Amendment retaliation. See generally Hartman v. Moore, 547 U.S. 250, 256 (2006) ("[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, . . . retaliation is subject to recovery as the but-for cause of official action offending the Constitution."). Plaintiff argues that, but for his actions in defending the charges against him, he would not have received a sanction exceeding six months, and that Defendants were unable to refer him to any precedent justifying the severity of his sanctions. See Compl. ¶ 91; ECF No. 15 at 29-30. Thus, Plaintiff has alleged facts which, taken as true, are sufficient to state a claim that Cullen and Dillon violated a clearly established constitutional right. Moreover, the facts alleged are sufficient to demonstrate that a

reasonable official would have known his actions were in violation of a protected constitutional right.  Defendants have not, therefore, at this stage in the litigation, established that they are entitled to qualified immunity.  As to the remaining UMBC Defendants, Hrabowski, Young, and Kirwan, Keerikkattil has not alleged any conduct sufficient to state a claim for First Amendment retaliation.  Therefore, as to those Defendants, in both their individual and official capacities, the motion to dismiss will be granted.  As to Defendants Cullen and Dillon, it will be denied.

  B.    **State Law Claims**

    1. **12(b)(1) 11th Amendment immunity**

    Defendants contend that Plaintiff's claims against the Board of Regents and the UMBC Defendants in their official capacities should be dismissed because this Court lacks jurisdiction to hear claims barred by the Eleventh Amendment. The Eleventh Amendment to the U.S. Constitution provides generally that, absent the State's consent to suit or express congressional abrogation of immunity, a state cannot be sued by a private citizen in federal court.  Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363-64 (2001).  This immunity likewise applies to governmental entities, including the University of Maryland.  Middlebrooks v. Univ. of Md. at College Park, 980 F. Supp. 824, 827 (D. Md. 1997).

Maryland has not waived its immunity for state law actions against state defendants in federal court. <u>Dixon v. Balt. City Police Dep't</u>, 345 F. Supp. 2d 512, 513 (D. Md. 2003). Thus, because the Board of Regents is "an arm of the State," it is entitled to Eleventh Amendment immunity and is dismissed. Additionally, because a suit for damages against a state official in his or her official capacity is considered a suit against the State, <u>see</u> <u>Will</u>, 491 U.S. at 89, the UMBC Defendants, to the extent Plaintiff seeks damages and retrospective relief, are entitled to Eleventh Amendment immunity in their official capacities as to all state law claims. The motion to dismiss therefore will be granted as to those claims.

### 2. **Counts III-IV**

Defendants argue that Counts III and IV, which assert claims for breach of contract and promissory estoppel, should be dismissed in their entirety. Specifically, Defendants argue (1) Counts III and IV are barred by sovereign immunity against the UMBC Defendants in their official capacities; and (2) Plaintiff has failed to state a claim for breach of contract or promissory estoppel.

Pursuant to Md. Code, State Gov't § 12-201(a), the State of Maryland has waived its sovereign immunity in contract actions "based on a written contract that an official or employee

executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee."  Maryland courts have rejected arguments, similar to Plaintiff's, that several written documents constitute an express written contract sufficient to waive sovereign immunity under § 12-201.  See, e.g., Stern v. Board of Regents, 846 A.2d 996, 1012-14 (Md. 2004).  Thus, Plaintiff's contention that he "applied to and was admitted to [UMBC] on the understanding and expectation that the University would implement and enforce the promises and policies made in its official publications, including the Student Handbook, the Code of Student Conduct, and other relevant documents," Compl. ¶ 97, is insufficient to allege the existence of a written contract that can overcome Maryland's sovereign immunity. Counts III and IV (breach of contract and promissory estoppel) are barred against the Defendants in their official capacities.

Moreover, with respect to the claims against Defendants in their personal capacities, Plaintiff's allegations are insufficient.  In support of his claims for breach of contract and promissory estoppel, Plaintiff does not allege any facts stating that the individual UMBC Defendants were parties to, and thus liable pursuant to, the alleged contract in their personal capacities, nor does he specifically allege what contractual duties Defendants owed to him or how the Defendants breached

21

those duties.  Plaintiff's Count IV, for promissory estoppel, suffers from similar defects – he does not allege that a promise was made to him by Defendants individually, or how he relied on those alleged promises to his detriment.  Rather, his claims are limited to conclusory statements unsupported by specific factual allegations.  As the Supreme Court noted in <u>Ashcroft v. Iqbal</u>, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  556 U.S. 662, 678 (2009).  Thus, the motion to dismiss will be granted as to Counts III and IV as to all UMBC Defendants.

### 3. **Counts V-XII**

Defendants contend that Counts V-XII, which assert a variety of common law torts, should be dismissed because they are barred by sovereign immunity.  Alternatively, Defendants assert that Defendant failed to state a claim.  Generally, state personnel are immune from suit for tortious acts or omissions made within the scope of their public duties so long as they acted without malice or gross negligence.  <u>See</u> Md. Code Ann., Cts. & Jud. Proc. § 5-522.  Even assuming, however, that Plaintiff asserted malice or gross negligence sufficient to overcome Defendants' qualified immunity, he failed to state a claim as to each of his state tort law claims.

### a. **Negligence, Negligence Per Se, and Gross Negligence -- Counts V-VII**

With respect to Counts V-VII, Plaintiff alleges that UMBC owed a duty of care to himself and others to conduct a disciplinary proceeding in a non-negligent manner. Specifically, with respect to his negligence claim, he alleges that the applicable standard of care "is informed by the Maryland Statutory Code, Code of Maryland Regulations, Title IX, and other Federal Regulations," that "the University's conduct, as described above, fell below the applicable standard of care and amounted to a breach of the University's duty of care," and that, as a result, Plaintiff suffered injury.  Compl. ¶¶ 108-111.  Regarding negligence per se, he alleges:

> 113. Title IX, COMAR Title 13b and other Federal and State Regulations create statutory duties that the University was obligated to perform.

> 114. Plaintiff is a person within the protections of Title IX, COMAR Title 13b and other Federal and State Regulations and is intended to be benefited thereby.

> 115. The University's violations of these statutes and its failure to perform its duties thereunder as described above have proximately caused injury to Plaintiff, constitute negligence per se, and are actionable.

Compl. ¶¶ 113-115.  Last, with respect to gross negligence, Plaintiff contends that the University engaged in conduct amounting to negligence and negligence per se, and that "[t]he University's actions were taken with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law."  Compl. ¶¶ 118-119.

Plaintiff's allegations are insufficient to state a claim for any of the three negligence counts.  Plaintiff does not allege a specific standard of care to which Defendants were obliged to conform, nor does he allege facts establishing a departure by the Defendants from that standard.  Although Plaintiff references Title IX specifically, his allegation that the University violated the statute is a legal conclusion unsupported by specific facts.  Moreover, he does not allege facts stating how Defendants' actions caused him harm or provide factual allegations to support his claim that the University acted with a conscious indifference to consequences.  Therefore, because Counts V-VII reference only bare legal conclusions, they must be dismissed as to all Defendants.

### b. **Negligent training and supervision -- Count VIII**

In Count VIII, Plaintiff alleges that Defendants negligently trained and supervised "employees" who "committed negligent, grossly negligent, and intentional tortious acts that caused injuries to the Plaintiff."  Compl. ¶¶ 123-124.  Although Plaintiff does not reference 42 U.S.C. § 1983 in his Complaint with regard to negligent training and supervision, he does claim to assert "a claim against a supervisor under § 1983" in his Opposition.  ECF No. 15 at 36.  To the extent that Plaintiff's claim is one for supervisory liability under § 1983, which permits supervisory officials to be "held liable in certain

circumstances for the constitutional injuries inflicted by their

subordinates," <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994),

it must be dismissed.  His assertions with respect to

supervisory knowledge, which appear to concern only Hrabowski

and Young, are limited to the alleged due process violations and

do not concern any allegedly retaliatory actions by Cullen.  As

stated above, Plaintiff failed to state a claim for a due

process violation.  Because there was no underlying

constitutional violation of which Hrabowski and Young were

allegedly aware and deliberately indifferent to, Plaintiff

cannot maintain a § 1983 for supervisor liability.  <u>See</u> <u>Shaw</u>, 13

F.3d at 798-99.

Moreover, Plaintiff failed to state a claim for common law

negligent training and supervision.  Generally, "[a]s in any

action for negligence," a cause of action for negligent training

and supervision requires a "duty, breach, causation, and

damages."  <u>Fidelity First Home Mort. Co. v. Williams</u>, 56 A.3d

501, 511 (Md. Ct. Spec. App. 2012).  Plaintiff alleges that,

because Cullen did not have any formal legal training or

judicial experience adjudicating criminal law, he was

unqualified for the position as Director of Student Judicial

Programs.  <u>See</u> Compl. ¶ 125, ECF No. 15 at 36.  Plaintiff

alleges that, as a result, "[t]he University knew, or in the

exercise of due care, should have known of these employees' lack

of training and inability to carry out their responsibilities
under the Student Judicial System, Title IX, and other Federal
and State statutes." Compl. ¶ 125.

Plaintiff does not allege, however, what duty Hrabowski and
Young owed, as President and Vice President of UMBC, in training
and supervising Cullen (or any other named Defendant).
Moreover, he does not allege any facts stating how that duty was
breached, or allege facts sufficient to support a claim that the
employees involved committed a negligent or intentionally
tortious action. As a result, Plaintiff's claim for negligent
training and supervision cannot survive a motion to dismiss.

### c. <u>Intentional Infliction of Emotional Distress --</u> <u>Count IX</u>

In Count IX, Plaintiff alleges that the University is
liable for intentional infliction of emotional distress. The
tort requires "1) intentional or reckless conduct, 2) that was
extreme and outrageous, 3) the conduct caused plaintiff's
emotional distress, and 4) plaintiff's emotional distress was
severe." <u>Baltimore-Clark v. Kinko's Inc.</u>, 270 F. Supp. 2d 695,
701 (D. Md. 2003) (citing <u>Harris v. Jones</u>, 380 A.2d 611, 614
(Md. 1977)). Extreme and outrageous conduct is conduct "so
'outrageous in character and so extreme in degree, as to go
beyond all possible bounds of decency and be regarded as
atrocious and utterly intolerable in a civilized community.'"

Id. (quoting Harris, 380 A.2d at 614).   The actions and
statements of the UMBC Defendants, even assuming the truth of
all facts alleged by Plaintiff, are not so outrageous as to be
"atrocious and utterly intolerable in a civilized community."
See id. ("Maryland courts have emphasized that the elements of
an intentional infliction of emotional distress are difficult to
satisfy and that 'major outrage is essential to the tort' . . ."
(quoting Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby,
607 A.2d 8, 11 (1992))).

### d. Conspiracy – Count X

"A claim for civil conspiracy requires proof of the
following elements: 1) A confederation of two or more persons by
agreement or understanding; 2) some unlawful or tortious act
done in furtherance of the conspiracy or use of unlawful or
tortious means to accomplish an act not in itself illegal; and
3) Actual legal damage resulting to the plaintiff."   Lloyd v.
General Motors Corp., 916 A.2d 257, 284 (Md. 2007) (quoting Van
Royen v. Lacey, 277 A.2d 13, 14-15 (1971)).   Again, although
Plaintiff's complaint incorporates by reference the preceding
paragraphs, his allegations with regard to the alleged
conspiracy contain no specific factual references.   Moreover, to
the extent that Plaintiff references any unlawful or tortious
act specifically, he claims that "Defendants acting in concert
participated in tortious actions against Plaintiff in

furtherance of a common design, intention and purpose to deny him his Due Process Rights and the opportunity for a free and fair Hearing."  Compl. ¶ 136.  Because the Court has already dismissed Plaintiff's due process claims, and thus the allegedly unlawful act on which Plaintiff's conspiracy claim was premised, the conspiracy claim must also be dismissed.  See Lloyd, 916 A.2d at 284 (noting that conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff").

### e. Malicious Use of Civil Process – Count XI

Malicious use of civil process requires (1) a prior civil proceeding instituted by the defendant, that was (2) instituted without probable cause (3) by the defendant with malice, which was (4) terminated in favor of the plaintiff, and (5) resulted in damage to the plaintiff "by arrest or imprisonment, by seizure of property, or by other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action."  Campbell v. Lake Hallowell Homeowner's Ass'n, 852 A.2d 1029, 1045 (Md. Ct. Spec. App. 2004) (quoting One Thousand Fleet Ltd. P'ship v. Guerriero, 694 A.2d 952, 956 (Md. 1997)).  Plaintiff has failed to allege a prior civil proceeding instituted by the UMBC Defendants that terminated in favor of the plaintiff.

### f. Defamation – Count XII

Last, Plaintiff alleges, in Count XII (Defamation), that Defendants knowingly made false and malicious statements that were "published to third parties with the knowledge of the falsity of the statements or in reckless disregard of truth or falsity."  Compl. ¶ 145-147.  In order to state a claim for defamation, Plaintiff must present sufficient facts that (1) the defendant made a defamatory statement to a third person; (2) the defamatory statement was false; (3) the defendant was legally at fault for making the statement, and (4) the plaintiff suffered harm thereby.  Gohari v. Darvish, 767 A.2d 321, 327 (Md. 2001) (quoting Rosenberg v. Helinski, 616 A.2d 866, 871 (Md. 1992)).  Plaintiff does not, however, identify any malicious or false statements made to a third party by the UMBC Defendants, nor the existence of any third party, and has therefore failed to state a claim for defamation.

### III. MOTION FOR PRELIMINARY INJUNCTION

The only claim that remains with respect to Plaintiff's Motion for Preliminary Injunction is Plaintiff's First Amendment retaliation claim under § 1983 against Cullen and Dillon. Because "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power[, they are to be] granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th

Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med.
Corp., 952 F.2d 802, 816 (4th Cir. 1991)).  Thus, in order to
secure a preliminary injunction, Plaintiff must show "that he is
likely to succeed on the merits, that he is likely to suffer
irreparable harm in the absence of preliminary relief, that the
balance of equities tips in his favor, and that an injunction is
in the public interest."  W. Va. Ass'n of Club Owners &
Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir.
2009) (quoting Winter v. Natural Res. Defense Council, Inc., 555
U.S. 7, 20 (2008)).

   The First Amendment right of free speech "includes not only
the affirmative right to speak, but also the right to be free
from retaliation by a public official for the exercise of that
right."  Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th
Cir. 2000).  "[I]n the context of an alleged violation of First
Amendment rights, a plaintiff's claimed irreparable harm is
'inseparably linked' to the likelihood of success on the merits
of plaintiff's First Amendment claim."  Musgrave, 553 F.3d at
298.

   Although Plaintiff's First Amendment retaliation claim
alleged sufficient facts to withstand a 12(b)(6) motion to
dismiss, the Court cannot say that Plaintiff is likely to
succeed on the merits or has alleged irreparable harm resulting
from the denial of preliminary relief.  Although "[t]he loss of

30

First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976), the essence of the requirement for irreparable harm is that irreparable harm will occur <u>in the</u> <u>absence of preliminary relief</u>.  Even if Plaintiff was retaliated against for the exercise of his First Amendment freedoms during the pendency of the disciplinary proceeding, this Court's refusal of a preliminary injunction will not exacerbate that alleged harm.  Moreover, because Plaintiff's First Amendment retaliation claim is premised on him receiving a more severe sanction, rather than a sanction in the first instance, presumably much of the harm alleged by Plaintiff would have occurred even in the absence of the asserted retaliation. Indeed, what Plaintiff seeks in his preliminary injunction is, in effect, the unraveling of the entirety of the disciplinary process, rather than just that related to the sanction exceeding six months.  Thus, any alleged harm relating solely to the enhanced sanctions is too speculative at this juncture to warrant immediate relief pursuant to a preliminary injunction. As a result, Plaintiff's request for a preliminary injunction will be denied.

### IV.  <u>MOTION TO STRIKE</u>

Plaintiff filed, on August 26, 2013, a Motion to Strike Defendant Soutry De's Affirmative Defenses pursuant to Fed. R.

31

Civ. P. 12(f).  See ECF No. 18.  De's Answer asserts a list of twelve affirmative defenses, unsupported by any specific factual allegations.  See ECF No. 17, ¶¶ 153-64.  Plaintiff contends that, because the pleading standards set forth in Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662, apply equally to the pleading of affirmative defenses, the Court should strike De's affirmative defenses as inadequate.  For the reasons set forth in Plaintiff's memorandum in support of his motion to strike, and in light of De's failure to file an opposition, the motion to strike De's affirmative defenses will be granted.  See, e.g., Bradshaw v. Hilco Receivables, LLC, 725 F. Supp. 2d 532, 536 (D. Md. 2010).  The Court notes that trial courts "liberally grant" leave to amend a party's answer "in the absence of a showing that an amendment would result in unfair prejudice to the opposing party."  Id. at 536-37.

## V.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part, Plaintiff's Motion for Preliminary Injunction will be denied, and Plaintiff's Motion to Strike Defendant Soutry De's Affirmative Defenses will be granted.

_____/s/_____<br>
William M. Nickerson<br>
Senior United States District Judge

DATED: September 23, 2013