IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RANJITH KEERIKKATTIL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: WMN-13-02016 |
| FREEMAN A. HRABOWSKI, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* ooo0ooo \* \* \* \*

## PLAINTIFF'S MOTION TO RECONSIDER DENIAL OF PRELIMINARY INJUNCTION AND PARTIAL GRANT OF MOTION TO DISMISS

Rule 52(b), 59(e) and 60(b) Motion

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
Telephone: (443) 690-1031
rkeerikkattil@gmail.com

*Plaintiff, pro se*

## INTRODUCTION

The Plaintiff moves the Court under Rules 52(b), 59(e) and 60(b) of FRCP for an order amending its September 23, 2013 order (ECF No. 19) ("Order") partially granting the Defendants' motion to dismiss and denying the Plaintiff's motion for preliminary injunction as well as requests relief from the judgment.

## ARGUMENT

### I. STANDARD OF REVIEW

Rule 59(e), titled "Motion to Alter or Amend a Judgment," states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Although the Federal Rules do not specify a standard for granting such relief, the Fourth Circuit has "recognized that there are three grounds for amending an earlier judgment [under Rule 59(e)]: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998), *cert. denied*, 525 U.S. 1104 (1999); *see Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007).

The purpose of Rule 59(e) is to "permit a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pac. Ins.*, 148 F.3d at 403 (citation omitted). In addition to this power of amendment, a district court may "clarify a previous judgment under the auspice of Rule

59(e) without necessarily amending it, so long as it is filed within" the time provided by the rule. *Brown v. Hovatter*, 525 F. Supp. 2d 754, 757 (D. Md. 2007).

Pursuant to Fed. R. Civ. P. 52, a court may amend its findings of fact -- or make additional findings--and may amend the judgment accordingly. Fed. R. Civ. P. 52(b).

Under Fed. R. Civ. P. 60, a court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Fed. R. Civ. P. 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Besides, this motion is filed within 28 days from the entry of judgment to comply with Fed. R. App. P. 4(a)(4)(A).

**II. Plaintiff has a valid due process claim even under Sohmer v. Kinnard**

This court in ECF No. 19 states:

Where a student faces a long-term suspension, are generally conducted consistent with due process when the following four procedural elements are present:

(1) The student must be advised, in advance of the hearing, [of] the charges against him.
(2) He is entitled to the names and a summary of the testimony of witnesses to be used against him, although he may not be necessarily entitled to be confronted by the witnesses at the hearing.
(3) The student has a right to be heard in his own defense and to be present and present evidence on his behalf, although this right does not necessarily extend to the actual appearance before the ultimate legal authority to administer discipline.
(4) No serious disciplinary action can be taken unless it is based upon substantial evidence.

*Sohmer v. Kinnard*, 535 F. Supp. 50, 53 (D. Md. 1982) (citing *Herman v. Univ. of S.C.*, 341 F. Supp. 226, 230-31 (D.S.C. 1971), aff'd, 457 F.2d 902 (4th Cir. 1972) (per curiam))

The Plaintiff did not receive the procedural protections described above. According to *Sohmer v. Kinnard*, "No serious disciplinary action can be taken unless it is based upon substantial evidence." UMBC does not have any evidence, much less substantial evidence to justify sanctions against the Plaintiff. Plaintiff has already reviewed the judicial file that UMBC's Office of Student Judicial Programs ("SJP") maintains and found no evidence that substantiates Soutry De's allegations. The judicial file contains all documents relating to SJP proceedings including all evidences presented at the Hearing arranged in a chronological order. Besides, De herself stated that she did not have any evidence as well as Paul Dillon who did not even bother to investigate De's claims. So unless Defendant Cullen can demonstrate that the sanctions were based on substantial evidence, the due process claim should not be dismissed against him. Besides,

the Plaintiff has evidence (audio recording) to show that the Hearing Board merely read out Cullen's pre-prepared document.

Again, according to *Sohmer v. Kinnard*, the charge student "is entitled to the names and a summary of the testimony of witnesses to be used against him." Defendant Cullen, sent an e-mail to the Plaintiff's e-mail address with the names of witnesses a few minutes before the Hearing when the Plaintiff was waiting outside preparing for the Hearing without access to e-mail. The Plaintiff did not see the e-mail until a couple of hours after the Hearing. Further, the e-mail did not contain summary of witness testimonies. Besides, UMBC had over a month since the Pre-Hearing Conference to provide the Plaintiff with them. Even UMBC's own documents require a minimum of 3 business days notice. It is also interesting to note that Paul Dillon apologized at the Hearing for his unjustified delay in submitting this. However, even after being aware of this procedural violation, the Hearing Board upon Cullen's instructions permitted the witnesses to testify when they should not have been allowed to do so.

For the foregoing as well as reasons stated below, the Court should reinstate the Plaintiff's Due Process Claims against Jeffrey E. Cullen in his individual and official capacities.

### III. Due process is flexible based on time, place and circumstances

This Court states that it is the due process clause of the U.S. Constitution, and not UMBC's internal policies, that guide the Court's analysis citing Jones v. *Bd. of Governors of Univ. of N.C.*, 704 F.2d 713, 717 (4th Cir. 1983). However, the due process clause

does not define how much process is due in a student discipline case. At a minimum, procedural due process requires fair notice and an opportunity to be heard "'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Yet "'due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Rather, it "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."); *see Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988). Further, a student facing long term suspension, the University is required to adhere to more formal procedures. See *Goss v. Lopez, 419 U.S. 565*, 584 (1975) (stating that "[l]onger suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures.")

Since the due process is flexible depending on the demand of situation, the best indicator of how much process the Plaintiff is due is UMBC's own standards that it applies to all students and publishes on its website. Since the Defendants do not dispute that they failed to follow this standard, there is no doubt that the Plaintiff's due process rights have been violated. Further, other courts have found unfair departures from an institution's own procedures can amount to a violation of due process. In *Furey v. Temple University*, 730 F. Supp. 2d 380, 383, 387 (E.D. Pa. 2010), a Temple student challenged his expulsion from the university after he was found responsible for violating three

sections of the Code. The court observed that "[s]ignificant and unfair departures from an institution's own procedures can amount to a violation of due process." *Id.* at 396-97 (citing *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972)).

### IV. Other Courts have recognized additional due process protection for students
#### a. Cross-Examination of Witnesses

In instances where the credibility of witnesses is essential to finding a student guilty or innocent of the university's charge and determining the severity of the student's potential suspension or expulsion, cross-examination may be essential in administering a fair Hearing. *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) (discussing the proposition that cross-examination is necessary to achieve fairness in a university disciplinary Hearing where there are serious issues as to witness credibility). In these "he-said-she-said" cases, cross-examination may be essential to due process because the weight the testimony is given will be highly dependent upon the credibility of the individual witness. *Id.* at 550. Statements that will be used as evidence of guilt, which are worth only as much as the credibility of the witness delivering them, should be subject to cross-examination because the outcome of the Hearing rides on the weight given to these statements. *Id.* at 549. Because the rights to confront and cross-examine witnesses are recognized as essential to due process, "the absence of proper confrontation at trial 'calls into question the ultimate integrity of the fact-finding process.'" *Ohio v. Roberts*, 448 U.S. 56, 64 (1980) (quoting *Chambers v. Mississippi*, 410 US. 284, 295 (1973)).

Cullen inappropriately interrupted Keerikkattil questioning the witnesses multiple times thereby preventing effective cross-examination. There is no doubt that UMBC's case rested solely on the credibility of its witnesses Soutry De's testimony since there was no evidence presented at the Hearing. Hence by interrupting Plaintiff's cross-examination of De, Cullen violated the Plaintiff's due process rights.

### b. Arbitrary and Capricious Sanctions

*Gargiul v. Tompkins*, 704 F.2d 661, 668 (2d Cir. 1983) ("If [the Plaintiff's] lengthy suspension without pay resulted from an arbitrary or capricious exercise of the Board's power, her due process rights were violated."); *Thompson v. Bass*, 616 F.2d 1259, 1267 (5th Cir. 1980) (finding that public employee who had a property interest in continued employment could establish a denial of substantive due process if termination was the result of arbitrary or capricious action). This Court had already noted that the Defendants were unable to refer the Plaintiff to any precedent justifying the severity of his sanctions (ECF No. 19 at p. 18). These arbitrary and capricious sanctions without any basis or precedent violates due process rights of the Plaintiff.

### c. Ex Parte Conversations

Ex parte conversations are a due process violation if "the integrity of the process and the fairness of the result" is tainted by the communication. *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 35 (D. Maine 2005). *See also Board of Regents v. Roth, 408 U.S. 564*, 584 (1972) ("[W]here the State is allowed to act secretly behind closed doors and without any notice to those who are affected by its actions, there is no check against the

possibility of such "arbitrary action.") (quoting *Slochower v. Board of Educ.*, 350 U.S. 551, 559 (1956)). Defendant Cullen made ex parte conversation with the Hearing Board behind closed doors and the arbitrary and capricious sanctions against the Plaintiff were a consequence of those conversations.

### d. Unbiased Hearing Board

"While there remain many vexing questions as to what due process requires in school disciplinary proceedings, a fundamental requirement is that a Hearing must be accorded before an impartial decision maker." *Winnick v. Manning*, 460 F.2d 545, 448 (2d Cir. 1972). University disciplinary Hearings, without a doubt, require that the student can plead his story to an unbiased tribunal. *Id.* at 548. Plaintiff has already described in detail allegations the question the unbiased nature of the Hearing Board including Cullen's influence over the Hearing Board as well as statements made by Hearing Board members especially Kristine Waters.

### V. Constitutional violations constitute irreparable harm to warrant preliminary injunction

"[A] plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing cases); *cf. Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) ("[T]he denial of a

constitutional right . . . constitutes irreparable harm for purposes of equitable jurisdiction.").

This Court noted that since the Plaintiff's First Amendment retaliation claim is premised on him receiving a more severe sanction, rather than a sanction in the first instance, presumably much of the harm alleged by Plaintiff would have occurred even in the absence of the asserted retaliation. The Court also noted that any alleged harm relating solely to the enhanced sanctions is too speculative at this juncture to warrant immediate relief pursuant to a preliminary injunction. However, the harm due to enhanced sanctions is not too speculative. Part of the sanctions is 100 hours of community restitution. The Plaintiff is left with the Hobson's choice of whether he should comply with them and thereby validating the University's arbitrary and capricious sanctions or refuse to perform them and thereby wait till a final judgment in this case is entered. State Defendants have expressed no interest in settling this case and neither do they have the incentive to do so since they litigate with taxpayer money. So this case could go on for months or years at the trial and appellate level. Plaintiff also requests this Court to reconsider the denial of his due process claim. Violation of Plaintiff's due process rights also warrants a preliminary injunction.

**VI. Defendants do not have any legal authority to impose sanctions on the Plaintiff**

Plaintiff had never been an enrolled student at UMBC since May 2010. In order to apply sanctions against the Plaintiff, Defendant Cullen made Plaintiff, a non-student to be

a "student" without any legal basis. Just because he aspired to consider the Plaintiff a "student" does not make him a "student". Defendants have not and cannot point to any federal or state statute that proves that the Plaintiff was an enrolled student at UMBC for it to have jurisdiction to apply sanctions against him. UMBC's General Counsel's Office considered him a "non-student" citing Md. Educ. Code while sending the ban letter and at the same time UMBC's Alumni Office sent him Homecoming invites claiming him to be an alumni. SJP would have jurisdiction over him only when Plaintiff gains "student" status i.e. when he starts attending classes at UMBC during Spring 2013 semester.

Besides, UMBC erred in its own Appellate Board Decision Letter. In it, the University states that the Plaintiff engaged in some "course of conduct" including but not limited to when Plaintiff was an enrolled student. However, the facts clearly indicate that the Plaintiff was never an enrolled student during any time relevant to the allegations. Further, the Plaintiff was an enrolled student at Towson University during almost all the time during these allegations from where he graduated with his Graduate Degree in August 2012[1]. It is quite unclear how UMBC could claim the Plaintiff to be its student when he was a student at another university. What UMBC essentially did was to illegally extend its vague and overboard Code of Student Conduct on the Plaintiff. Hence, the sanctions against the Plaintiff should be stricken and the Preliminary Injunction should be immediately granted since UMBC does not have any legal justification to impose sanctions against him.

---

[1] Plaintiff can introduce his Graduate Diploma as evidence. Besides Defendants can verify this themselves since Towson University is part of the University System of Maryland.

## CONCLUSION

For the foregoing reasons, the Plaintiff requests that the Court enter an order amending its September 23, 2013 order (ECF No. 19) ("Order") partially granting the Defendants' motion to dismiss and denying the Plaintiff's motion for preliminary injunction as well as requests relief from the judgment. The Plaintiff specifically requests that the Court reconsider the denial of preliminary injunction and reconsider the denial of his Due Process Claims against Jeffrey E. Cullen in his individual and official capacities. Besides, the Plaintiff also requests a hearing under Local Rule 105.6 to present evidence and clarify any questions that the Court may have regarding the facts relevant to this case.

Respectfully submitted,

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
Telephone: (443) 690-1031
rkeerikkattil@gmail.com

*Plaintiff, pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of October, 2013, a copy of this motion was served by first class mail and electronic mail to:

>Katherine D. Bainbridge
>Assistant Attorney General
>Office of the Attorney General
>200 St. Paul Place, 17th Fl.
>Baltimore, Maryland 21202-2021
>kbainbridge@oag.state.md.us

_____