IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RANJITH KEERIKKATTIL

   *Plaintiff,*

v.     *   Civil Action No. WMN-13-02016

FREEMAN A. HRABOWSKI, *et al.*    *
   *Defendants.*
                      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT FOR HIS MOTION TO RECONSIDER

### INTRODUCTION

NOW COMES Plaintiff, Ranjith Keerikkattil, hereby files the following Supplemental Brief in support of his Motion to Reconsider. Based on newly acquired evidence from Soutry De, Plaintiff respectfully requests this Court to reconsider its dismissal of his Civil Conspiracy and Negligence claims as well as requests the abrogation of Eleventh Amendment immunity of State Defendants in addition to the relief requested in his Motion to Reconsider.

### ARGUMENT

**I.**     **Civil Conspiracy**

"A claim for civil conspiracy requires proof of the following elements: 1) A confederation of two or more persons by agreement or understanding; 2) some unlawful

or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) Actual legal damage resulting to the plaintiff." *Lloyd v. General Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (quoting *Van Royen v. Lacey*, 277 A.2d 13, 14-15 (1971)).

This Court noted in ECF No. 19 at p. 10 that since it had already dismissed Plaintiff's due process claims, the conspiracy claim must also be dismissed since the allegedly unlawful act on which Plaintiff's conspiracy claim was premised was dismissed, citing *Lloyd*, 916 A.2d at 284.

Plaintiff believes that the Court erred in dismissing his due process claim for the reasons stated by him in ECF No. 27. Nonetheless, an independent cause of action does exist for civil conspiracy to violate federal constitutional rights under § 1983. "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996). *See also Glassman v. Arlington County*, 628 F.3d 140, 150 (4th Cir. 2010).

Based on the evidence turned over to the Plaintiff by Soutry De,

1. On December 6, 2012, Soutry De becomes aware that she would be facing trial at the Circuit Court of Baltimore County and contacts Paul Dillon (Ex. A).
2. On December 11, 2012 at 10:59 PM (the night before the Hearing), Dillon sends an e-mail to De with contacts at Sexual Assault Legal Information (SALI) (Ex. B).

3. On December 11, 2012, minutes before the Hearing, Cullen, Dillon and De meet in a closed room. They talk about the pre-planned decision to find the Plaintiff responsible and to make De a "victim" so that they could introduce Sanction Letter against the Plaintiff as evidence for De's defense in the Circuit Court1. One of the co-conspirators, De, confirms this meeting in her Answer (ECF No. 17 at ¶ 37).

4. Soon after this meeting Cullen sends an e-mail to Plaintiff's e-mail address stating that he had conferred De "victim"2 status even though none of the allegations against him in the Charge Letter falls under the definition of "crime of violence" or "non-forcible sexual offense" under Federal Law (ECF No. 1-9).

5. Cullen does his part and finds the Plaintiff responsible for the charges by interfering in the Hearing.

6. On January 7, 2013, Dillon sends an e-mail to De informing that he will be present for her defense on January 15, 2013 at the Circuit Court, even though the case had nothing to do with UMBC (Ex. C).

7. Between January 7, 2013 and January 15, 2013, Soutry De and Dillon contacts SALI for pro bono defense claiming (lying) De to be a victim of sexual assault since SALI represent victims of sexual assaults.

---

1 20 USC §1232g(b)(6)(B)-(C) states that the "final results" of campus disciplinary proceedings involving crimes of violence or nonforcible sex offenses are not prohibited from release under the Family Educational Rights and Privacy Act (FERPA).
2 "Victim" under FERPA refers to victim of crime of violence or nonforcible sex offense defined under 18 USC § 16.

3

8. On January 15, 2013, Dillon as agreed before shows up along with De at the Circuit Court. Jessica Powers-Haven representing De from SALI (ECF No. 1-23) explicitly uses the sanctions against the Plaintiff for De's defense. Also, at the Circuit Court, Chris Tkacik, serves the Plaintiff the Appellate Decision Letter stating that the Appellate Board upheld Plaintiff's sanctions on January 11, 2013. Interestingly, UMBC waited more than 3 days to inform this to the Plaintiff so that he would be unable to investigate and dispute the contents of the letter before De's trial. To date, UMBC has not provided a single piece of evidence to prove that the Appellate Board did indeed meet despite multiple requests by the Plaintiff.

Arbitrary, capricious and outrageous sanctions against the Plaintiff were designed with De's defense in mind. The mastermind being Dillon who had a special interest in De with who he continued to exchange calls and text messages even after De was no longer at UMBC. Cullen, Dillon and De's3 actions constitute a "meeting of the minds" through an expressed communication of a "conspiratorial objective." *Hinkle*, 81 F.3d at 421. These allegations, considered together, "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421. The Plaintiff has therefore stated a claim for civil conspiracy under § 1983.

---

3 Plaintiff agreed to dismiss claims against De under a settlement agreement. As part of the agreement De provided the Plaintiff evidence against co-conspirators Dillon and Cullen.

4

## II. Negligence

Under Maryland law, when a plaintiff alleges that a defendant's duty is established by statute, "all that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of." *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 79, 835 A.2d 616, 621 (2003). Once the statutory violation is shown, "[p]roximate cause is established by determining whether the plaintiff is within the class of persons sought to be protected, and the harm suffered is of a kind which the drafters intended the statute to prevent. It is the existence of this cause and effect relationship that makes the violation of a statute *prima facie* evidence of negligence." *Brown v. Dermer*, 357 Md. 344, 359, 744 A.2d 47, 55 (2000) (internal citations omitted), *overruled in part on other grounds by Brooks*, 378 Md. 70, 835 A.2d 616; *accord Gourdine v. Crews*, 405 Md. 722, 755, 955 A.2d 769, 789 (2008); *Brooks*, 378 Md. at 79, 835 A.2d at 621.

Title IX applies to all public and private educational institutions that receive federal funds, including colleges and universities. The statute prohibits discrimination on the basis of sex in a school's "education program or activity," which includes all of the school's operations. 20 U.S.C. § 1681(a), 1687. Besides, Title IX prohibits retaliating against a person who speaks out against sex discrimination. *Jackson v. Birmingham Bd. of Ed.*, 125 S. Ct. 1497, 1507 (2005) (reasoning that "the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination," therefore the Court need not rely on regulations promulgated under that statute because "the statute *itself* contains the necessary prohibition" against retaliation).

5

A school specifically agrees, as a condition for receiving federal funds, to operate all of its programs and activities in compliance with Title IX and the Department of Education's Title IX regulations. This agreement is known as an "assurance of compliance." 34 C.F.R. § 106.4(a)-(c). The University as a recipient of federal funds, is bound by Title IX and its regulations, and has executed an assurance of compliance.

Plaintiff did allege facts to state a claim for Title IX violation by Defendants including:

a. UMBC's SJP used its discretion to charge the Plaintiff with violations of Code of Student Conduct in the absence of any evidence because Jeff Cullen agreed with Paul Dillon's statement that De's statements are more reliable since she is a woman, a clear discrimination on the basis of sex.

b. Paul Dillon made no effort to investigate the allegations made against the Plaintiff by Defendant De even after multiple investigation requests by the Plaintiff. He was completely indifferent to the Plaintiff. However, he went out of the way to defend De. His conduct preceding Plaintiff's Hearing is clearly explained by the Plaintiff in his Civil Conspiracy claim. Further, Paul Dillon continued to send text messages and call De even after she graduated from UMBC (Ex. D). In fact, Dillon was so concerned about De that he even tried to solicit the Attorney General's Office to represent her, when in his official capacity he should have no business with De.

c. UMBC's SJP declined to investigate hostile environment sexual harassment by Defendant De towards the Plaintiff that caused him to quit his job at CCBC. In fact, even Defendant De confirms this fact in her Answer that she continued to work there after the Plaintiff resigned (ECF No. 17 at ¶ 77). This fact in itself questions the credibility of De's claims since the Plaintiff should have to be an idiot to quit his CCBC job since it would have given him the perfect opportunity to harass De as she claims and that too while getting paid for it.

d. UMBC's SJP declined to investigate and prosecute charges against De for making false statements on Police Report and the Hearing against the Plaintiff, in spite of the Plaintiff presenting evidence, stating that it has the discretion of doing so. Defendant De confirms this in her Answer that she did not have the face a Hearing Board (ECF No. 17 at ¶ 76).

Based on the evidence provided by De, below was the sequence of events that occurred:

1. Plaintiff sends an e-mail to Davonya Hall alleging violations of Rule 7 and 15 of UMBC's Code of Student Conduct.
2. Plaintiff follows-up this e-mail by meeting with Hall and presents evidence and promises to bring more evidence at the Hearing.
3. De became aware of it and contacts Dillon (Ex. E).
4. Dillon contacts Hall and Cullen (Hall's boss) to ensure that De is not charged.

    5. Plaintiff receives an e-mail from Hall stating she used her discretion to dismiss charges against De without a Hearing. She also sends a copy of the e-mail to De.

e. Defendants Cullen and Dillon presumed the Plaintiff to be responsible for charges by issuing a unilateral No Contact Order against the Plaintiff threatening him with further sanctions even when the equitable standard under Title IX requires that any such order should apply equally to both parties irrespective of sex.

f. Defendants Cullen and Dillon retaliated against the Plaintiff by imposing unfair, arbitrary and capricious sanctions because he criticized and spoke out against Dillon's special treatment of De based on sex. The Supreme Court in *Jackson v. Birmingham Bd. of Ed.*, 125 S. Ct. 1497 (2005) had held that Title IX prohibits retaliation against a person who speaks out against sex discrimination which is exactly what the Defendants did.

Therefore, Plaintiff has a valid claim for negligence against State Defendants for violating his Title IX rights. In fact, UMBC publishes a Non-Discrimination Policy Statement on its website at http://www.umbc.edu/ogc/hr/nondiscrimination.html, that specifically prohibits Title IX (Ex. F).

### III. Eleventh Amendment Immunity

Congress has the power, when acting under the authority of the Fourteenth Amendment, to abrogate Eleventh Amendment immunity by enacting legislation that

8

allows federal courts to hear these claims. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452-56, 49 L. Ed. 2d 614, 96 S. Ct. 2666 (1976). It is clear that Congress has acted to abrogate the immunity when a state is sued under Title IX. *Lane v. Pena*, 518 U.S. 187, 135 L. Ed. 2d 486, 116 S. Ct. 2092, 2099 (1996) (quoting 42 U.S.C. § 2000d-7(a)).

In passing the Civil Rights Remedies Equalization Act in 1986, Congress expressly conditioned the receipt of federal funds on a waiver of Eleventh Amendment immunity under certain enumerated federal anti-discrimination statutes, including Title IX. The statute provides:

(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, **title IX** of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

42 U.S.C. § 2000d-7 (emphasis added).

*See also Litman v. George Mason University*, 186 F. 3d 544 (4th Cir. 1999) (holding that Section 2000d-7 constituted a waiver of sovereign immunity for suits under

Title IX). Therefore, Plaintiff's claims alleging violations of Title IX are not barred by the Eleventh Amendment.

Under Md. Code Ann., Educ. § 12-102(b), "The government of the University System of Maryland is vested in the Board of Regents of the University System of Maryland." The Board "[i]s responsible for the management of the University System of Maryland and has all the powers, rights, and privileges that go with that responsibility," and may "sue and be sued . . . in all courts." Md. Code Ann., Educ. § 12-104(b)(3), (c)(1).

Consistent with the goals, objectives, and priorities of the Board of Regents and its legal responsibility for the efficient management of the University, [the Board] shall delegate to the president of each constituent institution authority needed to manage that institution, including authority to make and implement policies promoting the mission of that institution, including the authority to establish policies appropriate to the institution's mission, size, location, and financial resources. Md. Code Ann., Educ. § 12-104(k)(1).

Each institution of the University System is headed by a president, who "serve[s] as the chief executive officer of the institution," is "responsible and accountable to the Board for the discipline and successful conduct of the institution and supervision of each of its departments," and "serves at the pleasure of the Board of Regents." Md. Code Ann., Educ. § 12-109(c), (d)(1)-(2).

The Board asserts that from this structure, it is not responsible for any constitutional violations by UMBC. Although the Board's management of UMBC has been delegated to Hrabowski by statute, *see* Md. Code Ann., Educ. § 12-104(k)(1), the statute is equally clear that the Board retains ultimate responsibility for the entire

University System. *See* Md. Code Ann., Educ. §§ 12-104(c)(1), 12-109(d)(2). Combined with the Board's capacity to "sue and be sued," Md. Code Ann., Educ. § 12-104(b)(3), these provisions indicate that the Board is a proper defendant in this case.

Md. Code Ann., Educ. § 12-108 provides that the Board of Regents shall appoint a Chancellor of the University System of Maryland who serves as the Chief Executive Officer of the University System of Maryland.

§ 12-108. Chancellor;

(b) Powers and duties; term; compensation. --

> (1) The Chancellor shall:
>
>> (i) Advise the Board of Regents on systemwide policy;
>
> * * *

(vii) See that the policies of the Board are carried out.

UMBC's Student Judicial Programs operate based on USM Policy on Student Affairs (which includes student discipline) established by the Board of Regents based on the Chancellor's advice. The Chancellor also ensures that this policy is carried out at USM institutions that includes UMBC.

In addition, Md. Code Ann., Educ. § 12-106 (f) clearly establishes the link between Presidents of USM Institutions, the Chancellor and the Board of Regents regarding student discipline.

§ 12-106. Plan for and administration of University

f) Discipline of students; conduct of student organizations and athletic programs. -- In consultation with the Chancellor and the presidents, the Board may adopt policies providing for:

(1) The discipline, suspension, expulsion, or reinstatement of any student;

Therefore, the oversight and management of UMBC, including student affairs and disciplinary matters, is within the statutory authority of the Board of Regents of the University System of Maryland or the Chancellor of the University System of Maryland and are liable along with UMBC Defendants' for the violation of Plaintiff's Title IX rights. Further, the Defendants' Counsel have unsuccessfully used the same arguments that it had in this case (except that it deals with ADA instead of Title IX) to dismiss claims against the Board of Regents in *Jean v. Bd. of Regents of the Univ. Sys.*, 2013 U.S. Dist. LEXIS 103704 (D. Md. July 23, 2013). Judge Quarles denied the Board's motion to dismiss stating that the Board is responsible for violations of ADA by UMBC.

Therefore, State Defendants' should be held liable for damages under Title IX.[4]

## CONCLUSION

For the foregoing reasons and for reasons stated in his Motion to Reconsider, the Plaintiff requests that the Court enter an order amending its September 23, 2013 order (ECF No. 20) ("Order") partially granting the Defendants' motion to dismiss and denying

---

[4] In *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the Supreme Court held that Title IX implies a private right of action to enforce its prohibition on sex discrimination. In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), the Supreme Court held that it authorizes private parties to seek monetary damages for violations of Title IX.

the Plaintiff's motion for preliminary injunction as well as requests relief from the judgment.

Respectfully submitted,

*[signature]*

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
443-690-1031 (tel.)
rkeerikkattil@gmail.com

*Plaintiff, pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of October, 2013, a copy of the foregoing was served by first class mail and electronic mail to:

Katherine D. Bainbridge
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 17th Fl.
Baltimore, Maryland 21202-2021
kbainbridge@oag.state.md.us

*[signature]*