**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RANJITH KEERIKKATTIL

    *Plaintiff,*

v.                       \*   Civil Action No. WMN-13-02016

FREEMAN A. HRABOWSKI, *et al.*   \*
    *Defendants.*

                             \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S REPLY IN SUPPORT
## FOR HIS MOTION TO RECONSIDER

### INTRODUCTION

NOW COMES Plaintiff, Ranjith Keerikkattil, hereby files this Reply to his Motion to Reconsider (ECF No. 27) this Court's September 23, 2013 order (ECF No. 20) partially granting the Defendants' motion to dismiss and denying the Plaintiff's motion for preliminary injunction.

### PROCEDURAL HISTORY

On July 12, 2013, the Plaintiff, Ranjith Keerikkattil, filed a complaint against UMBC President Freeman A. Hrabowski, the Board of Regents of the University System of Maryland ("USM"), USM Chancellor William E. Kirwan, UMBC Vice President of Student Affairs Nancy L. Young, UMBC Director of the Office of Student Judicial Programs Jeffrey E. Cullen, Deputy Chief of UMBC Police Paul Dillon, and former

UMBC student Soutry De based on false and misleading claims against the Plaintiff by Soutry De.

In an order dated September 23, 2013, this Court sustained Count II (First Amendment Retaliation) as to Cullen and Dillon in their individual and official capacities, and denied them qualified immunity. The court also denied the Plaintiff's motion for preliminary injunction. Besides, none of the claims against Defendant De were dismissed and all her affirmative defenses were stricken by this Court.

Following this order, David Hoskins, Counsel for De initiated settlement discussions with the Plaintiff. During this time, the Plaintiff filed a motion for reconsideration of the Court's Order, in which he requested this Court to reconsider its dismissal of Count I (Due Process) and the denial of his motion for preliminary injunction. De and the Plaintiff reached a settlement on October 22, 2013 and the Plaintiff agreed to dismiss the claims against her based on the conditions stated in the Settlement Agreement. De also provided the Plaintiff, evidence against state defendants especially Dillon. Based on additional evidence provided by De, Plaintiff moved the Court to reconsider its dismissal of Civil Conspiracy against Cullen and Dillon and Negligence against all Defendants.[1] As will be discussed more fully below, the motion for reconsideration should be granted.

---

1 Defendants subsequently filed, on November 13, 2013, an "Opposition to Motion for Leave to File Supplemental Brief Based on Newly Acquired Evidence." Plaintiff intends to file a reply to that motion on or before November 27, 2013. Also Defendants erred in stating that Plaintiff does not seek reconsideration of any other claim other than Count I (Due Process).

## ARGUMENT

I. **Defendants made factual errors in stating that the Plaintiff failed to allege facts sufficient to state a claim for Due Process Violation**

Defendants claim that "the charging party presented the testimony of Ms. De, David Sweigart and Mr. Dillon." (ECF No. 34 at 4). If one would listen to the hearing recording, the only testimony that Paul Dillon provided, other than saying that Ms. De's testimony is "100% credible" was that Soutry De would testify. Further he had already admitted under oath that had not conducted any investigation on these allegations. See Ex. A at 3. Also relevant is the special interest Dillon had in De[2]. Hence Dillon's testimony does not constitute "substantial evidence". Soutry De's testimony at the hearing contradicted from her previous testimonies which the Plaintiff had already pointed out. Therefore De's perjured testimony and unsubstantiated claims also do not constitute "substantial evidence". David Sweigart himself admitted at the hearing that he did not know the Plaintiff before. More importantly, neither in the Peace Order petition nor in the Police Report filed by De on October 1, 2012, is Sweigart's name mentioned. Also, Sweigart did not present any evidence besides his testimony that was inconsistent with De's testimony. Besides, Defendants do admit that they did not present any evidence besides these testimonies. In the absence of any evidence, the credibility of witnesses'

---

2 Soutry De had indicated that she had sexual relations with Dillon in return for supporting her. That would explain why Dillon had a special interest in her including but not limited to lying in her defense. However, Plaintiff knows very well that De had lied multiple times in the past and this could have been another of her tactics to put the blame on Dillon to get a settlement with the Plaintiff. She also shared evidence about her communications with Dillon that continued even after she graduated from UMBC. Plaintiff expects to discover the full extent of the relationship between Dillon and De during discovery.

testimony is material in determining if the plaintiff was responsible as well as for sanctions imposed.

The Defendants state that "Mr. Keerikkattil claims that he was provided the names of the witnesses only "a few minutes before the Hearing"" (ECF No. 34 at 4). Again, the Defendants misrepresent Plaintiff's claims. Plaintiff does not state that Cullen provided him this information in person. Even though Cullen could have provided them in person while the Plaintiff was waiting outside the hearing room, he chose to e-mail them to Plaintiff's e-mail address knowing that the Plaintiff would not be able to access them before the hearing. Again, Defendant Cullen has no excuse in waiting till the last second to send this e-mail. Besides, Cullen mandated that the Plaintiff needs to submit the names of the witnesses and summary of the witness testimonies by December 7, 2012 by 4 PM (Ex. B). However, when it came to his colleague Paul Dillon, the deadline did not apply and Dillon was permitted to submit them even on the day before the hearing, December 11, 2012 – clearly a double standard.

Again, Defendants erred in stating that Exhibit 8 to the memorandum in support of his motion for preliminary injunction (ECF No. 2) establishes that Mr. Keerikkattil received both the names of the witnesses and a summary of their anticipated testimony in advance of the hearing. ECF No. 34 at 4. Exhibit 8 only shows that an e-mail was sent to the Plaintiff by Cullen a few minutes before the hearing. It does neither state that Defendant Cullen informed the Plaintiff about this e-mail nor does it establish that the Plaintiff got an opportunity to view the e-mail before this hearing.

4

Therefore even under the four-factor *Sohmer* test, Plaintiff has a valid Due Process claim. To the extent that the Defendants dispute any facts, Plaintiff requests a hearing under LR 105.6. Besides the Due Process claim does not add any additional discovery burden on the Defendants since Defendants have already agreed to provide all documents maintained by UMBC relating to the hearing (Ex. C). Therefore, a ruling on the Plaintiff's Due Process claim is more appropriate at the summary judgment or trial stage of this litigation.

Defendants again erred in claiming that his Due Process claim would not survive dismissal under "additional due process protections" supplied by courts in other jurisdictions (ECF No. 34 at 4). Defendants claim that the Plaintiff was allowed to cross-examine witnesses at the hearing. However, Defendants fail to mention that Cullen interrupted the Plaintiff multiple times while he was trying to question the witnesses preventing cross-examination. (Compl. ¶ 42). Interestingly, he did not interfere when Paul Dillon or Soutry De was talking.

Again, Defendants erred in stating that the Plaintiff failed to plead any facts to establish that the Hearing Board was biased. Plaintiff has already alleged that the Hearing Board was biased based on statements made by Kristin Waters and reiterated by other members of the Hearing Board. (Compl. ¶ 61). Defendants did indeed confirm Plaintiff's allegation in their Answer (Answer ¶ 61).

Therefore Plaintiff has not only stated a valid claim for Due Process[3] but has also provided sufficient evidence to support this claim and expect to uncover more evidence during discovery.

## II.      Plaintiff can demonstrate that he can succeed on the merits for Preliminary Injunctive Relief

Defendants claim that "Mr. Keerikkattil may have alleged the bare minimum to withstand a motion to dismiss on his claim of First Amendment retaliation as to Defendants Dillon and Cullen, he was unable to make the requisite clear showings that he was likely to succeed on the merits of his claim." (ECF No. 34 at 5). However, the Plaintiff can point to Defendant Dillon's own statement he made under oath as evidence that clearly shows that the Defendants retaliated against the Plaintiff. As we see from Ex. A At 4, Paul Dillon did admit that he wanted indefinite suspension and campus ban instead of six months because the Plaintiff criticized his conduct and investigation. The Plaintiff also requests that this Court enter *sua sponte* summary judgment[4] against Dillon on the First Amendment Retaliation claim unless he admits that he lied under oath at the Circuit Court. Also, the Plaintiff has these statements made by Dillon on record and will play the recording in Court if given the opportunity at a hearing.

---

3 The Defendants claim that The Plaintiff had "alternated between claiming to be a student and claiming to be a non-student". However, it was UMBC that alternated the Plaintiff's status between a student and non-student based on their convenience. Nevertheless, the sanctions were imposed against the Plaintiff as a student.

4 *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence")

## CONCLUSION

For the foregoing reasons, Plaintiff, Ranjith Keerikkattil, requests that his motion for reconsideration be granted. The Plaintiff also reiterates his request for a hearing under LR 105.6. Besides, the Plaintiff also requests that the Court liberally construe his claims as a *pro se* litigant especially when civil rights violations are alleged.[5]

---

5 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A plaintiff filing *pro se* is held to a "less stringent standard []" than is a lawyer, and the court must liberally construe his claims, no matter how "inartfully" pled."); *Brown v. N.C. Dept. of Corr.*, 612 F.3d 720, 724 (4th Cir. 2010) (observing that liberal construction of a complaint is particularly appropriate where a *pro se* plaintiff alleges civil rights violations).

Respectfully submitted,

Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
443-690-1031 (tel.)
rkeerikkattil@gmail.com

*Plaintiff, pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of November, 2013, a copy of the foregoing was served by first class mail and electronic mail to:

Katherine D. Bainbridge
Bradley J. Neitzel
Assistant Attorneys General
Office of the Attorney General
200 St. Paul Place, 17th Fl.
Baltimore, Maryland 21202-2021
kbainbridge@oag.state.md.us
bneitzel@oag.state.md.us

