**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RANJITH KEERIKKATTIL

    *Plaintiff,*

v.

FREEMAN A. HRABOWSKI, *et al.*     *
    *Defendants.*

      *

Civil Action No. WMN-13-02016

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**PLAINTIFF'S REPLY IN SUPPORT FOR HIS MOTION TO
MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF**

**INTRODUCTION**

NOW COMES Plaintiff, Ranjith Keerikkattil, hereby files this Reply to his Motion for Leave to File Supplemental Brief in support of his Motion to Reconsider Based on Newly Acquired Evidence (ECF No. 31).

**PROCEDURAL HISTORY**

On July 12, 2013, the Plaintiff, Ranjith Keerikkattil, filed a complaint against UMBC President Freeman A. Hrabowski, the Board of Regents of the University System of Maryland ("USM"), USM Chancellor William E. Kirwan, UMBC Vice President of Student Affairs Nancy L. Young, UMBC Director of the Office of Student Judicial Programs Jeffrey E. Cullen, Deputy Chief of UMBC Police Paul Dillon, and former UMBC student Soutry De based on false and misleading claims against the Plaintiff by Soutry De.

In an order dated September 23, 2013, this Court sustained Count II (First Amendment Retaliation) as to Cullen and Dillon in their individual and official capacities, and denied them qualified immunity. The court also denied the Plaintiff's motion for preliminary injunction. Besides, none of the claims against Defendant De were dismissed and all her affirmative defenses were stricken by this Court.

De and the Plaintiff reached a settlement on October 22, 2013 and based on additional evidence provided by her, Plaintiff moved the Court on October 30, 2013 to reconsider its dismissal of Civil Conspiracy against Cullen and Dillon and Negligence against all Defendants (ECF No. 31).

On November 5, 2013, Defendants filed an opposition to Plaintiff's motion to reconsider (ECF No. 34) and on November 13, 2013, Defendants filed an opposition to this motion (ECF No. 36). Plaintiff subsequently filed his Reply to motion to reconsider (ECF No. 37) on November 18, 2013.

As will be discussed more fully below, the Motion for Leave to File Supplemental Brief in support of his Motion to Reconsider Based on Newly Acquired Evidence should be granted.

## ARGUMENT

### I.    Plaintiff has pleaded facts to survive motion to dismiss

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). "[A] claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint and also any documents attached or incorporated by reference. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). For reasons that are explained in detail later in this motion, Plaintiff can demonstrate that he had pled sufficient facts along with supporting documents to survive a motion to dismiss.

## II.     Plaintiff was not given the opportunity to amend his complaint

Federal Rule of Civil Procedure 15(a), provides that leave to amend "shall be freely given when justice so requires," and the general rule is that Rule 15(a) be liberally construed. *See Forman v. Davis,* 371 U.S. 178, 182 (1962). Specifically, the Supreme Court observed that "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.' " *Id.* at 182. Accordingly, leave should be denied only when amending the pleading would prejudice the opposing party, reward bad faith on the part of the moving party, or would amount to futility. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). This Court has recently stated that "[a] review for futility is not an evaluation of the underlying merits of the case." *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, 2012 WL 37397, at *3 (D. Md. 2012);

3

*see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment."). At minimum, granting leave to amend is warranted when "at least some [of the requesting party's] claims are not futile." *Next Generation Grp.*, 2012 WL 37397 at *3.

Even though this Court denied Plaintiff's claims stated in this motion, he was denied leave to amend his complaint. However, nowhere in the opinion (ECF No. 19), does the Court state that amending the pleading would prejudice the opposing party, reward bad faith on the part of the moving party, or would amount to futility. Since the Plaintiff never had the opportunity to amend his complaint, he requests that this motion should be granted.

### III.    Plaintiff has pled facts to state a claim for Civil Conspiracy

Defendants do not dispute the overt acts stated by the Plaintiff in ECF No. 31-2 that he had already supported with evidence. Rather, they try to justify their improper conduct by stating that their conduct did not result in Due Process Violation under *Sohmer* standard. Plaintiff has already explained in detail in ECF No. 37 why he has a valid Due Process Claim even under *Sohmer* standard.

Besides Due Process, the Plaintiff has also a valid First Amendment Claim under § 1983 against the Defendants. To state a claim for Civil Conspiracy to violate Plaintiff's First Amendment Rights, the Plaintiff would need to state that the Plaintiff's Campus Ban

violates his First Amendment Rights and Defendants conspired to ban him UMBC Campus.

### a. Plaintiff's Campus Ban Violates His First Amendment Rights

The First Amendment to the United States Constitution provides that "Congress shall make no law. . . abridging the freedom of speech. . . or the right of the people peaceably to assemble and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

A three step process is useful when assessing whether government restrictions are valid under the First Amendment: "[F]irst, determining whether the First Amendment protects the speech at issue, [second,] identifying the nature of the forum, and [third,] assessing whether the . . . justifications for restricting [ ] speech 'satisfy the requisite standard.'" *Mahoney v. Doe*, 642 F.3d 1112, 1116 (D.C. Cir. 2011), quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

Defendants do not dispute that the triggering factor behind the Plaintiff's campus ban has been Soutry De's allegation that she was "threatened" by the Plaintiff saying "hello" and "how are you doing" at UMBC Library. The Supreme Court has defined "true threats" as only "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The Supreme Court also held in *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999) that for speech to be considered harassment in the educational setting, it must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an

educational opportunity or benefit." Therefore, Plaintiff's alleged statements of "hello" and "how are you doing", even if taken to be true by this Court does not constitute an "expression of an intent to commit an act of unlawful violence" or "speech to be considered harassment in the educational setting" and therefore is protected under the First Amendment.

Defendants do not dispute that UMBC Campus is open to the public and constitutes a "traditional public forum" under the First Amendment. In traditional public forums, which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions,"[1] the rights of government to limit expressive activity are sharply circumscribed. See *Perry Educ. Ass'n v. Perry Local Educators 'Ass 'n*, 460 U.S. 37, 45 (1983). Thus, for a government to enforce a content-based exclusion, it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *See Carey v. Brown*, 447 U.S. 455, 461 (1980). That standard is one of "strict scrutiny." *Chiu v. Piano Indep. Sch. Dist.*, 260 F.3d 330, 344-45 (5th Cir. 2001). A content-based regulation of speech will not satisfy strict scrutiny if there is a less restrictive means that "would be at least as effective in achieving the legitimate purpose" that is being served. *Reno v. ACLU*, 521 U.S. 844, 874 (1997). Plaintiff's campus ban was instituted based on the content of his speech in a traditional public forum. UMBC had many other less restrictive means of achieving this purpose, namely to prevent Plaintiff from saying "hello" and "how are you doing" to De on

---

[1] *Hague v. CIO*, 307 U.S. 496, 515 (1939)

UMBC campus rather than banning him from campus. Besides, Defendants still haven't justified the purpose behind their arbitrary and capricious ban for over 3 years when De would have graduated in May 2013 (within 6 months from the application of sanctions), have done so and no longer attends UMBC.

So, the Plaintiff's campus ban against him violates his First Amendment Rights under the three step test.

### b. Defendants Conspired to Ban the Plaintiff from UMBC

Plaintiff has already stated, supported by evidence that a "meeting of minds" occurred between Cullen, De and Dillon to ban him from UMBC Campus (ECF No. 31-2 at 3) that the Defendants do not dispute. It's clear from the record that the Defendants initiated disciplinary proceedings against the Plaintiff when the he started questioning the basis of his campus ban under § 26-102 of Md. Educ. Code claiming First Amendment violation. This Court does not have to look further to understand Defendants motive than Sanction Letter (ECF No. 1-8), where the Defendants specifically invoke § 26-102 to ban him from UMBC Campus for over 3 years even when the suspension was for about a year.

### IV.   Plaintiff has pled facts to state a claim for Title IX violation

Title IX states in pertinent part, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…" 20 U.S.C. § 1681(a).

Defendants in their Opposition (ECF No. 36 at 4) state "To satisfactorily state such a [Title IX] claim, Mr. Keerikkattil must first allege facts that demonstrate he was

subjected to severe or pervasive sexual harassment based on his sex such that it created an abusive environment in order to demonstrate a violation of Title IX" citing *John Doe and Jane Doe, et al. v. Bd. of Educ.*, 888 F. Supp. 2d 659, 665 (D. Md. 2012).

Defendants make a major error here. The above standard might have applied if the Plaintiff was claiming to be a victim of severe or pervasive sexual harassment based on his sex at UMBC. However, the Plaintiff's claims are Title IX Retaliation and Title IX Violations related to the Hearing.

### a. Title IX Retaliation

Defendants Cullen and Dillon retaliated against the Plaintiff by imposing unfair, arbitrary and capricious sanctions because he criticized and spoke out against Dillon's special treatment of De based on sex[2]. The Supreme Court in *Jackson v. Birmingham Bd. of Ed.*, 125 S. Ct. 1497 (2005) had held that Title IX prohibits retaliation against a person who speaks out against sex-based discrimination which is exactly what the Defendants did.

### b. Title IX Violations Based on Disciplinary Proceedings

Neither the Supreme Court nor the Fourth Circuit has set forth a standard for determining Title IX claims against universities arising from disciplinary hearings. However, the Sixth Circuit has set forth a standard in *Mallory v. Ohio Univ.*, No. 01-4111, 76 Fed. App'x 634, 638 (6th Cir. Sept. 11, 2003) expanding on the analytical

---

2 Plaintiff had stated in ECF No. 37, based on De's allegations, sexual relationship between De and Dillon and Dillon's conduct was motivated by sexual desire. Conduct stemming from sexual desire generally includes "explicit or implicit proposals of sexual activity," ... and "sexually charged comments." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Plaintiff has already sought communications including text messages between De and Dillon as part of his first set of discovery requests.

framework provided by the Second Circuit in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994).

"Title IX claims against universities arising from disciplinary hearings" are analyzed under the "erroneous outcome" standard, "selective enforcement" standard, "deliberate indifference" standard, and "archaic assumptions" standard. *Mallory*, 76 Fed. App'x 638 (internal citations omitted).

Under the "erroneous outcome" or "selective enforcement" standards, a plaintiff must demonstrate that the conduct of the university in question was motivated by a sexual bias. *Id.* Under the "deliberate indifference" standard, a plaintiff must "demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Id.* Finally, under the "archaic assumptions" standard, a plaintiff seeking equal opportunities has "the burden in establishing that a university's discriminatory actions resulted "from classifications based upon archaic assumptions." *Id.*

The Plaintiff had stated in his Complaint (ECF No. 1) that Cullen told him "it is perfectly normal for Ms. De to be treated differently," (Compl. ¶ 36), and that De "is more believable since she is a woman." (Compl. ¶ 31). These statements clearly indicate archaic assumptions regarding sex Cullen has that women are more believable than men, and hence De deserves preferential treatment compared to the Plaintiff

Plaintiff has stated numerous facts to show that the Defendants preferentially treated De because of her sex, which demonstrates sexual bias under "erroneous outcome" or "selective enforcement" of *Mallory* including:

9

i.    UMBC's SJP used its discretion to charge the Plaintiff with violations of Code of Student Conduct in the absence of any evidence because Jeff Cullen agreed with Paul Dillon's statement that De's statements are more reliable since she is a woman, a clear discrimination on the basis of sex.

ii.   Paul Dillon made no effort to investigate the allegations made against the Plaintiff by Defendant De even after multiple investigation requests by the Plaintiff. He was completely indifferent to the Plaintiff. However, he went out of the way to defend De and allegedly even had sexual relations with De.

iii.  UMBC's SJP declined to investigate and prosecute charges against De for making false statements on Police Report and the Hearing against the Plaintiff, in spite of the Plaintiff presenting evidence, stating that it has the discretion of doing so[3]. Further Plaintiff had also submitted evidence to show that Dillon interfered to ensure that De was not charged by SJP (ECF No. 31-7).

iv.   Defendants Cullen and Dillon presumed the Plaintiff to be responsible for charges by issuing a unilateral No Contact Order against the Plaintiff threatening him with further sanctions even when the equitable standard under Title IX requires that any such order should apply equally to both parties irrespective of sex.

---

3 Defendants in ECF No.36 state that the Plaintiff "was given an opportunity to meet with UMBC representatives to present evidence in support of his complaint" and Mr. Cullen's deputy then exercised her "discretion to dismiss charges Ms. De without a Hearing". However, Defendants fail to mention that Dillon communicated with Hall and Cullen to ensure that De was not charged. Also alarming is the amount of leverage Dillon has on SJP as well as the amount of discretion Cullen and Hall have in deciding whether or not to charge a student under UMBC's Code of Student Conduct.

Further, the Plaintiff did state that he had informed De's harassment towards him to Hrabowski and Young and did state that he was being treated indifferently by Cullen and Dillon (Compl. ¶ 36). However, they did not take any action regarding De's harassment and were indifferent to Plaintiff's plight. Further, the Plaintiff did write to them as well as Defendants Kirwan and Board of Regents about Cullen's and Dillon's conduct and they were indifferent to the Plaintiff as well (Compl. ¶ 73). Hence, the Plaintiff had alleged facts for deliberate indifference under *Mallory*.

Therefore, the Plaintiff has a valid Title IX claim under the *Mallory* standard for Title IX claims against universities arising from disciplinary hearings.

## CONCLUSION

For the foregoing reasons, Plaintiff, Ranjith Keerikkattil, requests that his Motion to Reconsider Based on Newly Acquired Evidence be granted.

Respectfully submitted,



Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
443-690-1031 (tel.)
rkeerikkattil@gmail.com

*Plaintiff, pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November, 2013, a copy of the foregoing was served by first class mail and electronic mail to:

> Katherine D. Bainbridge
> Bradley J. Neitzel
> Assistant Attorneys General
> Office of the Attorney General
> 200 St. Paul Place, 17[th] Fl.
> Baltimore, Maryland 21202-2021
> kbainbridge@oag.state.md.us
> bneitzel@oag.state.md.us