## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RANJITH KEERIKKATTIL

    *Plaintiff,*

v.

    Civil Action No. WMN-13-02016

FREEMAN A. HRABOWSKI, *et al.*
    *Defendants.*

                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S OPPOSITION TO SOUTRY
## DE'S MOTION TO QUASH SUBPOENAS

### INTRODUCTION

Plaintiff, Ranjith Keerikkattil, files this opposition to Soutry De's motion to quash

subpoenas for production of documents (ECF 43) served by Plaintiff on The Community

College of Baltimore County, University of Maryland Baltimore County and University

of Maryland School of Law.

### PROCEDURAL HISTORY

On July 12, 2013, the Plaintiff, Ranjith Keerikkattil, filed a complaint against

UMBC President Freeman A. Hrabowski, the Board of Regents of the University System

of Maryland ("USM"), USM Chancellor William E. Kirwan, UMBC Vice President of

Student Affairs Nancy L. Young, UMBC Director of the Office of Student Judicial

Programs Jeffrey E. Cullen, Deputy Chief of UMBC Police Paul Dillon, and former

UMBC student Soutry De based on false and misleading claims against the Plaintiff by Soutry De, who became estranged with him.

In an order dated September 23, 2013 (ECF 20), the Court struck down all the affirmative defenses raised by Soutry De in her Answer (ECF 17) to Plaintiff's Complaint. Besides, none of the claims against her were dismissed by the Court.

Following this order, Mr. David Hoskins, Counsel for Ms. De initiated settlement discussions with the Plaintiff. Ms. De and the Plaintiff reached a settlement on October 22, 2013 and the Plaintiff agreed to dismiss the claims against her based on conditions that were mutually agreed upon in a Settlement Agreement.

On January 9, 2014, Soutry De through her attorney filed a motion to quash the subpoenas for production of documents served by Plaintiff on The Community College of Baltimore County, University of Maryland Baltimore County and University of Maryland School of Law

For the reasons detailed below, the Plaintiff requests that the motion to quash be denied.

## ARGUMENT

### I.    Soutry De's Educational And Employment Records Are Relevant To This Litigation

The Federal Rules of Civil Procedure "freely permit discovery that is broad in scope." *Bassi & Bellotti S.p.A. v. Transcon. Granite, Inc.*, No. DKC-08-1309, 2010 WL 3522437, at *3 (D. Md. Sept. 8, 2010); see Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

The basis for sanctions against the Plaintiff has been Soutry De's testimony at the Hearing. Defendant Dillon had already admitted (ECF 37-1) that he had not conducted any investigation on Ms. De's claims. When asked about any evidence he has to support his allegations at the Hearing, Defendant Dillon merely stated that Ms. De will testify. Further, after her testimony, he stated that Ms. De is entirely credible. Because Ms. De testified at the Hearing and because her credibility was used as the basis for sanctions, the Plaintiff is entitled to an enquiry into her past for any evidence that could undermine her credibility. Also, since the Defendants have already deposed Ms. De on January 16, 2014 and since they could introduce her testimony at trial, Plaintiff should entitled to discover evidence that could be used to impeach her credibility.

Any records related to academic or non-academic misconduct at any of the educational institutions that she attended could be used to impeach her credibility. Soutry De's educational records at UMBC and UM Law will contain records relating to any convictions / allegations of misconduct against her. Besides, her employment records at CCBC would contain any evidence relating to her termination of employment at CCBC in October 2012, allegedly because of sexual misconduct towards male students.

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such

3

as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Impeachment of a witness is another permissible purpose for introducing evidence of prior acts. *United States v. Stockton*, 788 F.2d 210, 219 (4th Cir. 1986). Federal Rule of Evidence 608(b) states that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness...may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness concerning the witness' character for truthfulness or untruthfulness." The documents sought in Plaintiff's subpoena could be admissible under Rule 404(b) or Rule 608(b) and therefore his requests for Ms. De's educational and employment records are reasonably calculated to lead to the discovery of admissible evidence.

Further, one of the allegations that were made against the Plaintiff was that he showed up at Ms. De's home uninvited. However, during discovery Plaintiff found an e-mail where he seeks Ms. De's LSAT book that she had agreed to share with the Plaintiff. Her LSAT transcript would clearly indicate when she took her LSAT and would help in substantiating Plaintiff's claims that Ms. De did indeed invite him to her house. Another of Ms. De's allegation was that she suffered severe emotional distress. If her claims are true then it would have negatively impacted her grades for the Fall 2012 semester compared to the rest of her semesters at UMBC, which can only be identified from her transcripts at UMBC and/or transcripts submitted to University of Maryland School of Law.

## II.     Soutry De's Multiple Text Messages And Calls To Paul Dillon Are Relevant

Both Soutry De and Defendant Dillon admit to exchanging text messages that continued even after Ms. De graduated from UMBC. Besides, Soutry De stated at her deposition that the text messages she provided may not be all the text messages exchanged between her and Defendant Dillon. Soutry De also admitted to having multiple telephone conversations with Defendant Dillon, the details of which she could not recollect. These text messages and call details are important to discover the relationship between Ms. De and Defendant Dillon that includes alleged sexual relationship. The extent of their relationship is also relevant since it would identify to motivations behind Defendant Dillon's conduct before, at and after the Hearing.

To make things worse, Defendant Dillon has admitted that he had deleted text messages from his phone (Ex. 1) after the initiation of this litigation, which is gross negligence[1] and is most likely sanctionable for spoliation[2]. Courts have held that text

---

1 *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.") (citing *Zubulake IV*, 220 F.R.D. 212, 218 (S.D.N.Y. October 22, 2003)); *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("The duty to preserve relevant evidence is an independent duty that exists even if the party seeking the evidence did not request a court order for its preservation."); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d at 466 (stating that failure to implement a written litigation hold is gross negligence *per se*); *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 380 (D. Conn. 2007) (finding gross negligence where there was "no evidence that the defendants did anything to stop the routine destruction of the backup tapes after [their] obligation to preserve arose"); *Pastorello v. City of New York*, No. 95 Civ. 470, 2003 WL 1740606, at *11-*12 (S.D.N.Y. Apr. 1,2003) (concluding that loss of data due to unfamiliarity with record-keeping policy by employee responsible for preserving document was grossly negligent); *Treppel v. Biovail Corp.*, 249. F.R.D. 111, 121 (S.D.N.Y. 2008) (holding that the failure to preserve backup tapes after December 2003 was sufficient to constitute gross negligence or recklessness); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 198-99 (S.D.N.Y. 2007) ("[T]he Court finds that [the] utter failure to preserve documents and ESI [electronically stored information] relevant to plaintiffs' allegations in this case ... to be at least grossly negligent.") (collecting cases).

2 The term "spoliation" means "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors*

messages are as relevant as other forms communication such as e-mails and the failure to preserve them constitutes sanctionable conduct.[3] This conduct is especially outrageous from someone like him who claims to have over twenty five years of law enforcement experience. Plaintiff suspects that Defendant Dillon might have made a calculated decision to destroy them that might contain embarrassing or incriminating details of relationship between him and Ms. De. So, Ms. De's texts maintained on UMBC's network infrastructure are the only source available to discover these text messages. Besides, the search for these texts and call logs would impose no burden on Ms. De since they would be performed by UMBC and UMBC has not objected to them. Therefore, since the text messages and calls logs between Defendant Dillon and Ms. De are indispensable for this litigation and does not impose any burden on Ms. De, her motion to quash Plaintiff's requests for them should be denied.

### III.    Soutry De Communicated Extensively With Defendants Through Her UMBC E-mail Address

Soutry De had stated at her deposition that all her e-mail communications to Defendants were made through her UMBC e-mail account: sde1@umbc.edu. These e-mails definitely contain admissible evidence relevant to this litigation. Ex. 2 contains some of these e-

---

*Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).

3 *In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385, 3:12-md-02385-DRH-SCW, 2013 U.S. Dist. LEXIS 173674 (S.D. Ill. Dec. 9, 2013), the court rejected the argument that the failure to preserve text messages should not be sanctioned because they are a "less prominent form of communication" and that "the production of text messages is too burdensome." *Id* at *61. According to the court, the defendants "had a duty to ensure that their employees understood that text messages were included in the litigation hold" because "[i]t is certainly common knowledge that texting has become the preferred means of communication." *Id* at *62.

mails. Besides, the production of Soutry De's e-mails contained on UMBC's servers, like the requests for text messages above, would impose no burden on her.

## IV.   Motion to Quash Also Includes Documents That Have Nothing to Do With Soutry De

Soutry De's Motion to Quash served on UMBC does a poor job in clarifying if the motion is limited to the section identified by her in ECF 43-1 at 2-3. The subpoenas served on UMBC also include the following:

1. Please provide any and all records in your custody, possession or control which are set forth in Appendix B as per the ESI agreement reached between Plaintiff and UMBC. Besides, UMBC shall extend the search for Item # 2 from Fall 2008 to present instead of just Fall 2012. Also, UMBC shall provide all documents and evidence relating to digital forensic analysis it conducted on the audio recorder that it claimed malfunctioned during the Plaintiff's Pre-Hearing Conference.
2. Please provide any and all records in your custody, possession or control which are set forth below, for the period from 2010 to present, relating to Paul Dillon, Deputy Chief of UMBC Police:
   The records are to include, but not be limited to:
   A. Documents and Records relating to his employment at UMBC including his employment application;
   B. Documents and Records relating to pre-employment background checks performed on him;
   C. All complaints/allegations of misconduct against him including but not limited to improper sexual relations with UMBC students;
   D. Documents and Records relating to any disciplinary actions taken against him;
   E. Documents and Records relating to any internal/external investigations against him;
   F. Timesheets submitted by him for the pay periods that includes December 3, 2012 and January 15, 2013;
   G. Any and all contact information for Paul Dillon and
   H. Any records of any communication by or relating to Paul Dillon, in any form, including computer "logs" or "notes".
3. Please provide any and all records in your custody, possession or control which are set forth below, for the period from 2008 to present, relating to Jeffrey E. Cullen, Director of Office of Student Judicial Programs (SJP) at UMBC.
   The records are to include, but not be limited to:

A. Documents and Records relating to his employment at UMBC including his employment application;

B. Documents and Records relating to pre-employment background checks performed on him;

C. All complaints/allegations of misconduct against him including but not limited to improper sexual relations with UMBC students;

D. Documents and Records relating to any disciplinary actions taken against him;

E. Documents and Records relating to any internal/external investigations against him;

F. Any and all contact information for Jeffrey E. Cullen and

G. Any records of any communication by or relating to Jeffrey E. Cullen, in any form, including computer "logs" or "notes".

The above requests are reasonably calculated to lead to the discovery of admissible evidence and do not involve Soutry De. In fact, the Section 1 above is based on an ESI Agreement between UMBC's Counsel and Plaintiff (ECF 37-3) to which UMBC had already consented.[4] Besides, Defendants Cullen and Dillon have not moved to quash Sections 2 and 3 above. Therefore, this Court's consideration of Ms. De's motion to quash should be limited to what is listed by her in ECF 43-1 at 2-3.

## V.     Soutry De's Counsel Did Not Effectively Confer With The Plaintiff Before Filing His Motion To Quash

Soutry De's Counsel filed this motion about an hour of leaving a voice message on Plaintiff's phone. In fact, the Plaintiff saw the motion to quash filed with the court e-mailed to him before he got a chance to listen to the voice message. Therefore, Ms. De's Counsel did not effectively try to resolve this discovery dispute without court intervention. Had her Counsel sought clarifications regarding the relevancy of Plaintiff's

---

4 According to Fed. R. Civ. P. 45(d)(2)(B) , objections must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. UMBC has not raised any objections to Section 1 and the 14 day deadline has already passed.

requests, the Plaintiff would have been happy to do so. Besides, Plaintiff has been willing to consider any specific objections that she may have regarding the subpoenas served. However, Ms. De does not raise any specific objections but merely states that the subpoenas are not likely to lead to the discovery of admissible evidence (ECF 43-1 at 5) and that too without any citing any case law to support her argument. Therefore, Soutry De's motion to quash based on her boilerplate assertion that Plaintiff's subpoenas are unlikely to lead to the discovery of admissible evidence should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff, Ranjith Keerikkattil respectfully requests that the Court deny Soutry De's motion to quash subpoenas served by the Plaintiff on The Community College of Baltimore County, University of Maryland Baltimore County and University of Maryland School of Law.

Respectfully submitted,



Ranjith Keerikkattil
4707 Grand Bend Drive
Catonsville, MD 21228
443-690-1031 (tel.)
rkeerikkattil@gmail.com

*Plaintiff, pro se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of January, 2014, a copy of the foregoing was served by first class mail and electronic mail to:

> E. David Hoskins
> Max F. Brauer
> The Law Offices of E. David Hoskins, LLC
> 16 East Lombard Street, Suite 400
> Baltimore, Maryland 21202
> (410) 662-6500 (tel.)
> (410) 662-7800 (fax)
> davidhoskins@hoskinslaw.com
> maxbrauer@hoskinslaw.com
> *Attorneys for Soutry De*

> Erik J. Delfosse
> Assistant Attorney General
> Office of the Attorney General
> 200 St. Paul Place, 17th Fl.
> Baltimore, Maryland 21202-2021
> (410) 576-6412 (tel.)
> (410) 576-6437 (fax)
> edelfosse@oag.state.md.us
> *Attorney for Jeffrey E. Cullen and Paul Dillon*

